No. 99-261

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 178

300 Mont. 331

8 P.3d 763

IN RE THE MARRIAGE OF

BRANADINE C. STRONG,

Petitioner and Respondent,

v.

JUSTIN T. STRONG,

Respondent and Appellant.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

John Bobinski, Helena, Montana

For Respondent:

Dennis G. Loveless, Helena, Montana

_____

Submitted on Briefs: December 29, 1999

Decided: July 6, 2000

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

1. ¶Justin T. Strong (Justin) appeals from the Findings of Fact and Conclusions of Law, and Final Decree of Dissolution of Marriage entered by the First Judicial District Court, Lewis and Clark County, dissolving the marriage of Justin and Branadine C. Strong (Brandy) and equitably dividing the marital estate. We reverse and remand.
2. ¶In essence, two issues are raised by Justin on appeal. Those issues are restated:
3. ¶(1) Did the District Court err in distributing a portion of Justin's VA disability benefits to Brandy as part of the division of marital property?
4. ¶(2) Did the District Court err in awarding attorney's fees to Brandy?

## BACKGROUND

1. ¶Justin and Brandy were married on February 7, 1995. They have three sons. In the spring of 1995, Justin enlisted with the United States Army and was subsequently stationed in Germany. Brandy moved, in the summer of 1995, to join Justin in Germany. In September of 1995, while on active duty in Germany, Justin was involved in a car accident which left him disabled.
2. ¶In October of 1995, Brandy returned to Helena and moved in with her parents. Justin returned to Helena in November of 1995, at which time he moved in with his parents. Then, in March of 1996, Justin moved into a mobile home on his parents' property. Brandy resided with Justin in the mobile home, although not on a regular basis. The parties totally separated in January of 1997, and have lived apart since that time. A permanent order of protection was entered in Justice Court on March 5, 1997, restraining both parties from having any contact with each other.
3. ¶As a result of the accident, Justin has been rated as 100% unemployable and 60% disabled by the United States Veterans' Association (VA). Justin receives $2,145 per month in VA disability benefits. The VA disability benefits are Justin's only current source of income. In November of 1997, Justin received a lump sum settlement

from the VA in the amount of $31,667 for back disability payments. This lump sum settlement was received during the parties' marriage, and the dollar amount was based on the fact that Justin was married and had three children. From the settlement, Justin gave his parents over $20,500; none of the settlement went to assist Brandy or the children.

4. ¶In April of 1997, Brandy petitioned for dissolution of marriage. At the time of dissolution, the only money remaining from Justin's lump sum VA settlement was $1,440; this money had been placed in a savings account for the children that was under the control of Justin's mother. Throughout the marriage, Brandy was the primary caretaker of the children. To support the children while awaiting dissolution, Brandy collected AFDC between January of 1997 and April of 1998; Justin did not pay any child support to Brandy during that time. Brandy was unemployed at the time of filing for dissolution, and the District Court entered an order for temporary child support in April of 1998 pending a final decree of dissolution. Justin has not seen any of his children since early 1997.

5. ¶The parties held almost no real property at the time of dissolution. As a part of the distribution of the marital estate, the District Court ordered Justin to execute a promissory note to Brandy in the amount of $5,000, payable in one year with legal interest, to compensate for the fact that Justin did not use any of his lump sum VA disability settlement to assist Brandy or the children. The District Court further ordered that Justin turn over to Brandy the $1,440 in savings remaining from the lump sum settlement. Lastly, the District Court ordered that Justin pay Brandy her reasonable attorney's fees and costs.

## DISCUSSION

1. **¶(1) Did the District Court err in distributing a portion of Justin's VA disability benefits to Brandy as part of the division of marital property?**

2. ¶Justin contends that the District Court erred in failing to find that federal law preempts Montana law on the question of whether a trial court may include VA disability benefits in a marital estate and award those benefits as part of an equitable division of marital property. Thus, this issue raises a question of law. We review a district court's legal conclusion *de novo*, seeking to determine whether the court correctly interpreted the law. In re Marriage of Barker (1994), 264 Mont. 110, 113, 870 P.2d 86, 88. A finding of federal preemption will be sustained in the area of domestic relations only where "Congress has 'positively required by direct enactment' that state law be pre-empted." Hisquierdo v. Hisquierdo (1979), 439 U.S.

572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1, 11 (quoting Wetmore v. Markoe (1904), 196 U.S. 68, 77, 25 S.Ct. 172, 176, 49 L.Ed. 390, 394).

3. ¶Specifically, Justin asserts that since both the United States Supreme Court and this Court have held that federal law preempts state courts from including VA disability benefits in a marital estate and awarding those benefits in a dissolution action, the District Court committed error in ordering him to execute a $5,000 promissory note and turn over the remaining $1,440 of his lump sum VA disability settlement to Brandy. In so contending, Justin relies on Mansell v. Mansell (1989), 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675, and this Court's application of the *Mansell* decision in In re Marriage of Murphy (1993), 261 Mont. 363, 862 P.2d 1143.

4. ¶In *Mansell*, faced by "one of those rare instances where Congress has directly and specifically legislated in the area of domestic relations," the U.S. Supreme Court held that the federal Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408 (USFSPA or the Act), "does not grant to state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits." *Mansell*, 490 U.S. at 587, 594-95, 109 S.Ct. at 2028, 2032, 104 L.Ed.2d at 684, 689. Following *Mansell*, we held in *Marriage of Murphy* that "[o]ur courts may not include in a marital estate military retirement pay which has been waived in order to receive veterans' disability benefits from the United States." *Marriage of Murphy*, 261 Mont. at 368, 862 P.2d at 1146 (limiting expressly In re Marriage of Cooper (1990), 243 Mont. 175, 793 P.2d 810, which held that military disability benefits may be included in a marital estate under Montana law).

5. ¶On the basis of the foregoing holdings, Brandy argues that both *Mansell* and *Marriage of Murphy* are factually distinguishable from the case at bar. Here, in contrast, there are no military retirement benefits at issue which have been waived in order to receive VA disability benefits. Indeed, Justin served in the military for only a few months prior to his discharge for medical reasons related to the debilitating automobile accident; and that short stint of service did not entitle Justin to military retirement benefits, which generally require, as Brandy points out, service in a branch of the Armed Forces for a specified period of at least twenty years. *See Mansell*, 490 U.S. at 583, 109 S.Ct. at 2025, 104 L.Ed.2d at 681.

6. ¶Thus, Brandy asserts that *Mansell* and *Marriage of Murphy* provide no authority for reversing the District Court's inclusion of a portion of Justin's VA lump sum disability settlement in the marital estate pursuant to the "however and whenever acquired" directive of § 40-4-202, MCA. Leaving aside the question of federal preemption for the moment, Brandy is correct in asserting that Montana law vests

our trial courts with broad authority to equitably divide a marital estate in a dissolution action:

In a proceeding for dissolution of a marriage, . . . the court, without regard to marital misconduct, shall . . . finally equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both.

Section 40-4-202(1), MCA.

1. ¶However, Brandy's attempt to distinguish *Marriage of Murphy* to avoid federal preemption faces a formidable obstacle in the strong language of the opinion. In *Marriage of Murphy*, this Court unequivocally stated that the *Mansell* decision "clearly directed State courts that a serviceperson's <u>Veterans' Administration (VA) disability pay cannot be considered as part of a marital estate</u> . . . ." *Marriage of Murphy*, 261 Mont. at 365, 862 P.2d at 1144 (emphasis added). Indeed, in *Marriage of Murphy*, we repudiated the *Cooper* Court's reliance on the "however and whenever acquired" directive of § 40-4-202, MCA, as a legal basis for including VA disability benefits in a marital estate, reasoning that "[s]uch inclusion in the marital estate of the 'VA' disability benefits is an incorrect analysis of the law following the *Mansell* decision." *Marriage of Murphy*, 261 Mont. at 366, 862 P.2d at 1145 (holding that although *Marriage of Cooper* was "incorrectly decided" with respect to VA disability benefits, it "remains precedent" for military retirement pay); *see also* Lawrence J. Golden, *Equitable Distribution of Property* § 6.06A, at 182 (Supp. 1993) (criticizing *Marriage of Cooper* as having "erroneously" divided military disability pay under state law "without even discussing the [federal] preemption question").

2. ¶That Justin never "waived" military retirement pay in order to receive VA disability benefits does not answer the question of whether the USFSPA preempts, of its own force, state law on the question of whether VA disability pay may be included in a marital estate. Although this case presents a different factual scenario than that presented by *Mansell* or *Marriage of Murphy*, we conclude, as discussed below, that the exclusionary provisions of the USFSPA preempt state court inclusion of VA disability benefits in a marital estate regardless of whether or not the VA disability benefits in question were received by waiving a corresponding amount of military retirement pay. Since we reverse the District Court's property

distribution as erroneous, this case must be remanded for reconsideration of the dissolution decree in its entirety. However, in order to properly assess the preemptive force of *Mansell* for purposes of guidance on remand, we contemporaneously consider the property division requirements of § 40-4-202, MCA, to determine how our trial courts can honor both state and federal law in effecting an equitable distribution of marital property.

### *Federal Law Preempts Inclusion of VA Disability Benefits in a Marital Estate*

1. ¶Our holding today turns primarily upon the U.S. Supreme Court's interpretation of the preemptive scope of the USFSPA. The Court determined, in *Mansell*, that the Act has "pre-emptive effect of its own." *Mansell*, 490 U.S. at 591, 109 S.Ct. at 2030, 104 L.Ed.2d at 687 (rejecting the argument that the Act is solely a federal garnishment statute). In 1982, the USFSPA was enacted by Congress in direct response to the Court's decision in McCarty v. McCarty (1981), 453 U.S. 210, 101 S. Ct. 2728, 69 L.Ed.2d 589, which held that the federal statutes then governing military retirement pay preempted the authority of state courts to treat military retirement pay as marital property. The *McCarty* Court reasoned that since Congress intended that military retirement benefits reach only the veteran and no one else, treating such pay as marital property under state law would do clear damage to federal military personnel objectives. *See McCarty*, 453 U.S. at 232-35, 101 S.Ct. at 2741-42, 69 L.Ed.2d at 605-07.

2. ¶Congress, in enacting the USFSPA on the heels of *McCarty*, thus authorized state courts to treat "disposable retired pay" as marital property. *See* 10 U.S.C. § 1408(c)(1). The Act defines "disposable retired pay" as expressly excluding, *inter alia*, military retirement pay waived to receive a corresponding amount of VA disability benefits pursuant to Title 38 of the United States Code, as well as military disability retirement pay received pursuant to Chapter 61 of Title 10. *See* 10 U.S.C. § 1408(a)(4)(B)-(C). Under the Wartime Disability Compensation Act, 38 U.S.C. § 1110, and the Peacetime Disability Compensation Act, 38 U.S.C. § 1131, VA disability payments are authorized for any disability resulting from "personal injury suffered or disease contracted in line of duty, in the active military, naval, or air service," with the two pieces of legislation being identical in their language except one applies "during a period of war" while the other applies "during other than a period of war." *Compare* 38 U.S.C. § 1110, *with* 38 U.S.C. § 1131. These are the Title 38 disability sections referred to in 10 U.S.C. § 1408(a)(4)(B). In re Marriage of Jennings (Wash. 1999), 980 P.2d 1248, 1251.

3. ¶Here, Justin's VA disability benefits are plainly received under Title 38. Hence, the dispositive question becomes whether those Title 38 VA disability benefits fall outside the definition of "disposable retired pay" contained in the USFSPA. Following passage of the Act but prior to the *Mansell* decision, state courts were split on the question of whether Title 38 VA disability pay could be included in a marital estate and divided as marital property. *Compare* In re Marriage of Daniels (Cal. Ct. App. 1986), 231 Cal. Rptr. 169, *and* Campbell v. Campbell (La. Ct. App. 1985), 474 So.2d 1339 (opting for divisibility), *with* Davis v. Davis (Ky. 1989), 777 SW.2d 230, In re Marriage of Costo (Cal. Ct. App. 1984), 203 Cal. Rptr. 85, *and Ex parte* Burson (Tex. 1981), 615 S.W.2d 192 (finding federal preemption).

4. ¶However, *Mansell* definitely resolved the above split in state court authority. In *Mansell*, the U.S. Supreme Court construed Congress' enactment of the USFSPA as evincing an intent to restore to the states only part of their pre-*McCarty* authority to divide military retirement pay. *See Mansell*, 490 U.S. at 587-88, 109 S.Ct. at 2028, 104 L.Ed.2d at 684 (concluding that since *McCarty* held that federal law "completely pre-empted" the application of state marital property laws to military benefits, "Congress could overcome the *McCarty* decision only by enacting an affirmative grant of authority" to the states). The *Mansell* Court therefore determined that the USFSPA was intended to only partially overrule the total preemption holding of *McCarty*.

5. ¶Given the very precise statutory definition of "disposable retired pay" contained in the USFSPA, which states are authorized by § 1408(c)(1) of the Act to treat as marital property, the Court reasoned that if military benefits other than "disposable retired pay" were divisible in a dissolution proceeding, then Congress' careful definition of that term would be superfluous. We quote from the *Mansell* decision:

Section 1408(c)(1) of the Act affirmatively grants state courts the power to divide military retirement pay, yet its language is both precise and limited. . . . [U]nder the Act's plain and precise language, <u>state courts have been granted the authority to treat disposable retired pay as [marital] property; they have not been granted the authority to treat total retired pay as [marital] property</u>. [Emphasis added.]

*Mansell, 490 U.S. at 588-89, 109 S.Ct. at 2028-29, 104 L.Ed.2d at 685.*

1. ¶After the U.S. Supreme Court's plain language interpretation of the Act in *Mansell*, federal law preempts state courts from exercising jurisdiction in a dissolution proceeding over any military benefit that is <u>not</u> "disposable retired pay." Under the

plain language of the USFSPA, "disposable retired pay" by definition excludes VA disability benefits received under Title 38. 10 U.S.C. § 1408(a)(4)(B). Therefore, noting the "personal" nature of VA disability pay, we held in *Marriage of Murphy* that "[t]he Act defines the disposable retired or retainer pay as not including VA disability specifically." *Marriage of Murphy*, 261 Mont. at 367, 862 P.2d at 1145 (emphasis added); s*ee also* In re Marriage of Stone (1995), 274 Mont. 331, 335-36, 908 P.2d 670, 673 (noting that the Act "prohibits state courts and state legislatures from dividing veterans' disability benefits").

2. ¶In sum, "[a]fter *Mansell*, veterans' disability pay clearly constitutes the owning spouse's nonmarital property." Lawrence J. Golden, *Equitable Distribution of Property* § 6.06A, at 181 (Supp. 1993); *see also* Note, *Mansell v. Mansell: How it Changed the Definition of Marital Property for the Military Spouse*, 30 J. Fam. L. 97, 109 (1991-92) ("The holding of *Mansell* clearly prevents state courts from treating military disability benefits as marital property subject to division on divorce.").

3. ¶Moreover, as Justin correctly asserts, VA disability benefits are further federally protected from inclusion in a marital estate by the anti-attachment clause of 38 U.S.C. § 5301, which provides that VA benefits are "exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatsoever, either before or after receipt by the beneficiary." 38 U.S.C. § 5301(a). Indeed, had the U.S. Supreme Court failed in *Mansell* to find VA disability benefits exempt from marital property distribution under the USFSPA's definition of "disposable retired pay," it would have eviscerated the force of 38 U.S.C. § 5301(a). *cf. Mansell*, 490 U.S. at 598, 109 S.Ct. at 2034, 104 L.Ed.2d at 691 (O'Connor, J., dissenting (addressing what was formerly 38 U.S.C. § 3101(a)).

4. ¶Although the *Mansell* majority declined to decide whether the federal anti-attachment clause of what is now 38 U.S.C. § 5301 "independently protects" VA disability pay from inclusion in a marital estate, *Mansell*, 490 U.S. at 587 n.6, 109 S. Ct. at 2027 n.6, 104 L.Ed.2d at 684 n.6, several state courts both before and after *Mansell* have reached such a conclusion. *See, e.g.*, Murphy v. Murphy (Ark. 1990), 787 S.W.2d 684; In re Marriage of Howell (Iowa 1989), 434 N.W.2d 629; In re Marriage of Costo (Cal. Ct. App. 1984), 203 Cal. Rptr. 85; In re Marriage of Hapaniewski (Ill. App. Ct. 1982), 438 N.E.2d 466; Rickman v. Rickman (Ariz. Ct. App. 1980), 605 P.2d 909; *Ex parte* Johnson (Tex. 1979), 591 S.W.2d 453. These cases establish the general proposition that awarding VA disability pay upon dissolution amounts to a "seizure" of those benefits in violation of 38 U.S.C. § 5301.

5. ¶We hold that in enacting both the USFSPA and 38 U.S.C. § 5301(a), Congress has

positively required by direct enactment that state courts be preempted from including VA disability benefits in a marital estate. The property division dictates of § 40-4-202, MCA, must yield to federal law, for to allow inclusion of VA disability benefits in a marital estate would do major damage to clear and substantial federal objectives. *Hisquierdo*, 439 U.S. at 581, 99 S.Ct. at 808, 59 L.Ed.2d at 11. We further hold, therefore, that the District Court erred in awarding a portion of Justin's VA disability benefits to Brandy as part of the equitable distribution of marital property.

6. ¶Because questions of equitable distribution, spousal maintenance, and child support are inextricably intertwined, this case must be remanded to the District Court for reconsideration of the dissolution decree in its entirety. Consequently, we deem it appropriate, for purposes of guidance on remand, to address what authority the courts of Montana have over VA disability benefits without running afoul of the Supremacy Clause.

### VA Disability May be Considered as a Financial Circumstance of the Parties

1. ¶In making an equitable apportionment of marital property, Montana trial courts are directed to consider, *inter alia*, the

station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties; custodial provisions; whether the apportionment is in lieu of or in addition to maintenance; and the opportunity of each for future acquisition of capital assets and income.

Section 40-4-202(1), MCA. The statute mandates that the court make an equitable property distribution in light of the totality of the parties' post-dissolution economic circumstances. Indeed, without full information before it regarding the financial circumstances of each party, a district court would be hard pressed to achieve an equitable distribution or determine whether maintenance is necessary in addition to or in lieu of property apportionment.

1. ¶"Generally, Montana law prefers property dispositions over maintenance in dissolution matters." In re Marriage of Smith (1993), 260 Mont. 533, 536, 861 P.2d 189, 191; *see also* In re Marriage of Dowd (1993), 261 Mont. 319, 325, 862 P.2d 1123, 1127 (concluding that when properly read together, §§ 40-4-202 and -203, MCA, instruct a district court, where appropriate, "to order a division of marital

property, as opposed to an award of maintenance, to satisfy the financial needs of the parties").

2. ¶Notably, the USFSPA speaks only to a state court's power to "treat" VA disability benefits as marital property divisible upon dissolution. *See* 10 U.S.C. § 1408(c)(1). Similarly, nothing in 38 U.S.C. § 5301(a) prohibits consideration of a veteran's disability benefits as a financial circumstance relevant to achieving an equitable property apportionment sufficient to provide for the "reasonable needs" of the other spouse post-dissolution. *See* § 40-4-203(1)(a), MCA.

3. ¶Consistent with the requirements of both state and federal law, we therefore held in *Marriage of Murphy* that

*Mansell* . . . does not prohibit . . . consideration of [a veteran's] disability [benefits] as part of his [or her] potential future income. Our legislature has specifically provided that courts must consider the potential future earning power of the parties when making its division of the marital estate. Section 40-4-202, MCA. . . . VA disability benefits are part of [a veteran's] future income earning potential.

*Marriage of Murphy, 261 Mont. at 368, 862 P.2d at 1146.*

1. ¶Other jurisdictions are in accord with this approach, both in community property states, *see, e.g.*, In re Marriage of Kraft (Wash. 1992), 832 P.2d 871; Rothwell v. Rothwell (Tex. App. 1989), 775 S.W.2d 888; and Bewley v. Bewley (Idaho Ct. App. 1989), 780 P.2d 596, as well as in equitable distribution states like Montana, *see, e.g.*, Clauson v. Clauson (Alaska 1992), 831 P.2d 1257; Jones v. Jones (Haw. Ct. App. 1989), 780 P.2d 581; and Davis v. Davis (Ky. 1989), 777 S.W.2d 230.

2. ¶In short, consistent with both state and federal law, a district court may consider VA disability benefits in the same way it considers each party's ability to earn income post-dissolution as an important factor in achieving an equitable property division, *Jones*, 780 P.2d at 584, thus avoiding the need to award spousal maintenance. Such an approach is consistent with Montana law to the extent that it furthers our policy of favoring property distribution over maintenance. It is also consistent with federal law in that it provides a disabled veteran sole possession of his or her disability benefits both in law and in fact. *Clauson,* 831 P.2d at 1263 n.9.

3. ¶However, we caution trial courts to be careful not to achieve indirectly what they may not do directly. "Disability benefits should not, either in form or substance, be treated as marital property subject to division upon the dissolution of marriage."

*Clauson*, 831 P.2d at 1264. S*ee, e.g.*, *Marriage of Kraft*, 832 P.2d at 875-76 (holding that "[i]t is improper under *Mansell* for the trial court to reduce military disability retirement pay to present value where the purpose of ascertaining present value is to serve as a basis to award the nonretiree spouse a proportionally greater share of the [marital] property as a <u>direct offset of assets"</u>) (emphasis added); *Clauson*, 831 P.2d at 1264 (holding that it is "in direct contravention of the holding in *Mansell*" for a trial court to "simply <u>shift an amount of property equivalent</u> to the [cash value of the veterans' disability benefits] from the military spouse's side of the ledger to the other spouse's side") (emphasis added); *Jones*, 780 P.2d at 583-84 (holding that it is error under *Mansell* to reduce military disability retirement pay to its present value and then use that value as basis for awarding other spouse <u>offsetting marital property of equal cash value</u>).

4. ¶ Since we reverse the District Court's property distribution as erroneous, the court will have to revisit the interrelated questions of property apportionment, spousal maintenance, and child support. In this case, however, the parties held minimal marital property and Justin's VA disability pay constitutes his only current source of income. Should the court's new property distribution appear inadequate to provide for Brandy's "reasonable needs" post-dissolution, then the District Court may consider awarding Brandy spousal maintenance under § 40-4-203, MCA, in lieu of or in addition to what marital property the court may legally apportion to her. Even though Justin's VA disability benefits are his sole current source of income and, thus, would necessarily be used to satisfy his maintenance obligations, such action is permitted under the logic of the U.S. Supreme Court's decision in Rose v. Rose (1987), 481 U.S. 619, 107 S.Ct. 2029, 95 L.Ed.2d 599.

5. ¶In *Rose*, the Tennessee trial court held the veteran spouse in contempt for failing to pay ordered child support. The veteran challenged that action on appeal, arguing that it was impermissible since his income was composed almost entirely of disability benefits received from the VA. *See Rose*, 481 U.S. at 622, 107 S.Ct. at 2032, 95 L.Ed.2d at 605 (noting that the veteran also received nominal monthly disability income from the Social Security Administration). After reviewing the legislative history applicable to what is now 38 U.S.C. § 5301(a) (formerly 38 U.S. C. § 3101(a)), the Court held that VA disability benefits were never intended to be exclusively for the subsistence of the beneficiary. Rather, Congress intended such benefits

to support not only the veteran, but the veteran's family as well. Recognizing an exception to the application of [§ 5301(a)'s] prohibition against attachment, levy, or seizure in this

context would further, not undermine, the federal purpose in providing these benefits.

*Rose, 481 U.S. at 634, 107 S.Ct. at 2038, 95 L.Ed.2d at 613. The Court thus held that the "[n]either the Veterans' Benefits provisions of Title 38 nor the garnishment provisions of the Child Enforcement Act of Title 42" preempt the authority of state courts to enforce a child support order against a veteran, even where the veteran's income is composed of VA disability benefits that would necessarily be used to pay child support. See Rose, 481 U.S. at 636, 107 S.Ct. at 2039, 95 L.Ed.2d at 614.*

1. ¶Under the logic of *Rose*, since "Congress clearly intended veterans' disability benefits to be used, in part, for the support of veterans' dependents," *Rose*, 481 U.S. at 631, 107 S.Ct. at 2036, 95 L.Ed.2d at 610-11, "a state court is clearly free to consider post-[dissolution] disability income and order a disabled veteran to pay spousal support even where disability benefits will be used to make such payments." *Clauson*, 831 P.2d at 1263 n.9. In addition to Alaska, several other jurisdictions have concluded that federal law does not prohibit considering veterans' disability pay as a source of income in awarding spousal maintenance. *See* In re Marriage of Kraft (Wash. 1992), 832 P.2d 871; Womack v. Womack (Ark. 1991), 818 S.W.2d 958; In re Marriage of Nevil (Colo. Ct. App. 1991), 809 P.2d 1122; Riley v. Riley (Md. Ct. Spec. App. 1990), 571 A.2d 1261; Lambert v. Lambert (Va. Ct. App. 1990), 395 S.E.2d 207; Weberg v. Weberg (Wis. Ct. App. 1990), 463 N.W.2d 382; *see also* Lawrence J. Golden, *Equitable Distribution of Property* § 6.06A, at 182 (Supp. 1993).

2. ¶Nor, because of the "qualitative difference" between a maintenance award and a property distribution award, does a trial court's award of maintenance which will be paid with military disability benefits accomplish indirectly what may not be accomplished directly under *Mansell*. *See Marriage of Nevil*, 809 P.2d at 1123; *but see* § 25-13-608(2)(b), MCA (stating that under Montana law, a judgment debtor's disability benefits are exempt from execution except where, as here, execution would be levied for maintenance to be paid to a former spouse who is the <u>custodial parent</u> of a child for whom support is owed or owing).

3. ¶In conclusion, a "trial court in a marriage dissolution action may consider military disability retirement pay as a source of income in awarding spousal or child support, or generally as an economic circumstance of the parties justifying a disproportionate award of [marital] property to the nonretiree spouse." *Marriage of Kraft*, 832 P.2d at 877. Such a narrow interpretation of federal preemption in this area is entirely consistent with the principle that domestic relations are preeminently matters of

state law. *Mansell*, 490 U.S. at 587, 109 S.Ct. at 2028, 104 L.Ed.2d at 684.

**¶(2) Did the District Court err in awarding attorney's fees?**

¶Justin contends that the District Court erred under both state and federal law in awarding attorney's fees to Brandy. Justin argues that since VA disability constitutes his only current source of income, the District Court's award of attorney's fees effectively runs afoul of *Mansell* and *Marriage of Murphy*. Justin further argues that payment of Brandy's attorney's fees will necessarily have to be made from property that is exempt from being executed upon by creditors pursuant to 38 U.S.C. § 5301 and § 25-13-608, MCA. This claim raises a question of law which we review *de novo*. *Marriage of Barker*, 264 Mont. at 113, 870 P.2d at 88.

¶As determined under the first issue on appeal, an award of spousal maintenance or child support may be levied against VA disability payments notwithstanding the anti-attachment strictures of 38 U.S.C. § 5301(a). However, Justin points this Court to authority suggesting that an award of attorney's fees and costs to a spouse in a dissolution action is not on the same footing as an award for maintenance or support and, therefore, cannot be enforced against exempt property. *See* Jane Massey Draper, Annotation, *Enforcement of Claim for Alimony or Support, or for Attorneys' Fees and Costs Incurred in Connection Therewith, Against Exemptions*, 52 A.L. R.5th 221, 285-89 (1997). As Justin suggests, the rationale for treating an award of maintenance differently from an award of attorney's fees is that, in contrast to deeply rooted familial support obligations which transcend ordinary debt, an award of attorney's fees simply establishes a debtor-creditor relationship to which exempt property statutes are applicable. *See, e.g.*, Stone v. Stone (Ark. 1934), 67 S.W.2d 189, 191 (holding that award to spouse's attorney to be paid out of veteran spouse's exempt military pension created a debtor-creditor relationship, thus falling within statutory exemption).

¶Similarly, this Court has held that since an award of maintenance is based on the "natural obligation" or moral "duty" of one spouse to support the other spouse and children, it is to be distinguished from an ordinary "judgment debt" to which the exemptions of § 25-13-608, MCA, apply. *See* In re Marriage of Boharski (1993), 257 Mont. 71, 74-76, 847 P.2d 709, 712-13 (holding that union disability payments do not constitute exempt property under § 25-13-608, MCA, with respect to award of maintenance); *see also* § 25-13-608(2)(a)-(b), MCA (providing, as amended in 1997, that disability payments are not exempt from execution for child support or for maintenance to be paid custodial parent of child for whom support is owed or owing).

¶Thus, the question that arises is whether an award of attorney's fees in a dissolution

action amounts to a judgment debt within the meaning of § 25-13-608, MCA. As analyzed below, we conclude that it does. Therefore, an award of attorney's fees in a dissolution action may not be executed against exempt VA disability benefits. *See* § 25-13-608(c)-(d), MCA; 38 U.S.C. § 5301(a).

9. ¶In reaching our decision, we are aware that some courts have treated an award of attorney's fees in a dissolution action as a form of spousal maintenance and, on that basis, have upheld the award against exempt property. *See, e.g.*, Bickel v. Bickel (Ariz. Ct. App. 1972), 495 P.2d 154, 156 (holding that where attorney's fees are awarded as part of the same dissolution decree awarding spousal support, award may be enforced against exempt property because "such fee is as much support as any payments directly to the [spouse]"); Gerold v. Gerold (Or. Ct. App. 1971), 488 P.2d 294, 294-95 (holding that notwithstanding what is now 38 U.S.C. § 5301(a), award of maintenance and attorney's fees proper because the exemption statute was intended "to serve as a shield for the veteran and his dependents, not to serve as a sword to be used by the veteran against his dependents").

10. ¶Notwithstanding those decisions, we begin with the following general observation:

The award of attorney fees has been described as an incident of[,] . . . as an accessory to, or in the very same category as, other maintenance-related obligations. However, the award of such fees is not an element of, and is independent of, the division of property, and has been characterized as not related to, or as separate from, and not to be considered as, maintenance. [Emphasis added.]

27B C.J.S. *Divorce* § 343, at 157 (1986) (footnotes omitted).

1. ¶In resolving this matter, we take guidance from the Supreme Court of Missouri's *en banc* decision in Dyche v. Dyche (Mo. 1978), 570 S.W.2d 293. Montana, like Missouri, is one of a handful of states that have adopted the attorney's fees provision (§ 313) of the Uniform Marriage and Divorce Act. *See* 3 *Family Law and Practice* § 39.01[4][b], at 39-8 (Arnold H. Rutkin ed., 1995). In *Dyche*, the court faced the question of whether garnishment in aid of execution on a judgment for attorney's fees awarded in a dissolution proceeding was within the "support exception" to statutory limitations on garnishment. The *Dyche* court noted that prior to Missouri's adoption of the Uniform Marriage and Divorce Act, there was no express statutory authorization for the award of attorney's fees in a dissolution proceeding, but that judicial interpretation had allowed attorney's fees as being a form of and included within a court's statutory authority to award "alimony." *See Dyche*, 570 S.W.2d at

295-96.

2. ¶Similarly, prior to Montana's adoption of the Uniform Marriage and Divorce Act, including the attorney's fees provision of § 40-4-110, MCA, the trial courts of this state were statutorily authorized, pending a final dissolution decree, to award " 'as alimony any money necessary to enable the [spouse] to . . . prosecute or defend the action.' " *See* Crum v. Crum (1960), 137 Mont. 407, 408-09, 352 P.2d 988, 989 (quoting § 21-137, RCM (1947)); Albrecht v. Albrecht (1928), 83 Mont. 37, 46, 269 P. 158, 161 (quoting § 5769, RCM (1921)). Under that statutory scheme, an award of attorney's fees clearly was a form of temporary support or alimony *pendente lite*.

3. ¶However, the statutory scheme changed dramatically with the Montana Legislature's enactment of the Uniform Marriage and Divorce Act in 1975. Now there is a separate statute pertaining to the award of costs and attorney's fees in a dissolution action (§ 40-4-110, MCA), which is entirely distinct from the statutory provisions for an award of temporary maintenance or support pending dissolution (§ 40-4-121, MCA), an award of post-dissolution maintenance (§ 40-4-203, MCA), or an award of post-dissolution child support (§ 40-4-204, MCA). Importantly, an award of attorney's fees is not subject to the statutory provisions for an award of support or maintenance. Rather, it involves a separate inquiry into "the financial resources of both parties" at the time attorney's fees are considered, and the court is authorized in its discretion to order the attorney's fees to be paid directly to the attorney, "who may enforce the order in the professional's name." Section 40-4-110 (1), MCA.

4. ¶The *Dyche* court determined that the "separate treatment of maintenance and child support, as one type of an award, and litigation costs and attorney fees as another type of an award, demonstrates a legislative intent not to . . . award attorney fees as an incident to . . . maintenance." *Dyche*, 570 S.W.2d at 296. We agree with the *Dyche* court, which reasoned that there is compelling rationale for treating such awards differently. "The primary purpose of maintenance and child support is to provide subsistence for the spouse and the children; not to provide immediate payment of a debt to a third party." *Dyche*, 570 S.W.2d at 296. Therefore, to permit a judgment for attorney's fees to be executed against exempt property would, in the words of the *Dyche* court, "defeat the purpose of the awards for maintenance and child support, and would permit the attorney for the spouse to whom the award was made to receive preferential treatment over other creditors of the debtor, for example, [the debtor-spouse's] own attorney." *Dyche*, 570 S.W.2d at 297.

5. ¶Statutes establish the law of this state regarding the subjects to which they relate. Section 1-2-103, MCA. We hold that the separate statutory provisions for an award

of attorney's fees and an award of maintenance or support in a dissolution action express a legislative intent that a judgment for attorney's fees not be characterized as a form of maintenance or support. Thus, we further hold that both Montana and federal law prohibits an attorney's fees award from being executed upon VA disability benefits. We need not reach Justin's other claims regarding the award of attorney's fees.

6. ¶We note that the District Court did not direct that the award of attorney's fees be paid from Justin's VA disability benefits. Justin received several assets of value in the marital property distribution and, as Brandy argues, he is free to satisfy the attorney's fee award from that and other property without impinging upon his exempt property. On remand, we direct the District Court to reconsider the necessity for an award of attorney's fees after revisiting the questions of property distribution, maintenance, and child support. However, the court shall entertain any showing by Justin that the amount of the attorney's fees award, if any, exceeds the value of his non-exempt property.

7. ¶Lastly, both parties intimate that this Court should grant them damages on appeal. We are permitted to grant damages whenever it appears that an appeal "was taken without substantial or reasonable grounds." Rule 32, M.R.App.P. We decline to award damages in this case; the appeal was meritorious.

8. ¶Reversed and remanded for further proceedings consistent with this opinion.

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART