**THIRD DIVISION**
**DOYLE, P. J.,**
**GOBEIL, J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 14, 2023**

# In the Court of Appeals of Georgia

A23A0393. BOOMER v. BOOMER.

PHIPPS, Senior Appellate Judge.

Following a bench trial, the trial court issued a final judgment and divorce decree to plaintiff Karrie Boomer and defendant Joseph Boomer. Karrie appeals from the denial of her motion for a new trial, contending that: (i) the trial court erred by concluding that a lump-sum payment of Department of Veterans Affairs ("VA") disability benefits received by Joseph during the parties' marriage was non-marital property; and (ii) the evidence did not support the court's ruling that Karrie misappropriated $70,935.26 from Joseph's lump-sum payment. For the reasons that follow, we affirm in part, reverse in part, and remand the case to the trial court for further proceedings.

On appeal from a bench trial, we view the evidence in the light most favorable to the trial court's rulings and defer to its credibility judgments. See *Gibson v. Gibson*, 301 Ga. 622, 624 (801 SE2d 40) (2017). So viewed, the record shows that the parties started dating in September 2015 and were married in May 2016. In June 2017, Joseph received a lump-sum award of $130,237.30 for retroactive VA disability benefits. At the time, Karrie handled Joseph's finances and therefore had access to his bank account. Two days after Joseph received the lump-sum VA payment, Karrie transferred, with Joseph's authorization, $60,000 from Joseph's bank account to her separate bank account. The money was intended to be used for various expenditures for both parties, including the purchase of $20,000 worth of stock. Ten days later, Karrie transferred another $50,000 from Joseph's bank account to her account, this time without Joseph's authorization. Karrie never returned that money to Joseph.

In March 2019, Karrie instituted this action for divorce, seeking equitable division of the marital assets. Joseph counterclaimed, also seeking equitable division of the marital assets and alleging that Karrie had misappropriated various funds for which she refused to account. Following a two-day hearing, the trial court issued a divorce decree in which it concluded, as relevant to this appeal, that Karrie improperly appropriated $70,935.26 from Joseph's lump-sum VA payment,

2

consisting of $20,935.26 that she deposited into an investment account over which Joseph had no authority and $50,000 that she transferred elsewhere. The court further concluded that those sums constituted non-marital funds and, on that basis, ordered Karrie to pay Joseph $70,935.26 "as an equitable division of the marital property owned by the parties." After the trial court denied Karrie's motion for a new trial, she filed an application for discretionary review, which we granted. See *Boomer v. Boomer*, Case No. A23D0008 (Aug. 12, 2022). This appeal followed.

1. We first address Karrie's challenge to the trial court's ruling that Joseph's lump-sum VA payment was non-marital property. Karrie primarily contends that, under Georgia's "analytical approach," at least part of the award was marital property. See, e.g., *Dees v. Dees*, 259 Ga. 177, 177-178 (377 SE2d 845) (1989). We discern no error in the trial court's ruling.

> The equitable division of property is an allocation to the parties of the assets acquired during the marriage, based on the parties' respective equitable interests. The purpose behind the doctrine of equitable division of marital property is to assure that property accumulated during the marriage be fairly distributed between the parties. Only property acquired as a direct result of the labor and investments of the parties during the marriage is subject to equitable division. A property interest brought to the marriage by one of the marriage partners is a non-marital asset and is not subject to equitable

3

division since it was in no sense generated by the marriage. It is a question of law for the court whether a particular category of property may legally constitute a marital or non-marital asset, but whether a particular item of property actually is a marital or non-marital asset may be a question of fact for the trier of fact.

*Payson v. Payson*, 274 Ga. 231, 231-232 (1) (552 SE2d 839) (2001) (citations and punctuation omitted).

Although property not accumulated during the marriage and belonging to one or the other party may be taken into account in deciding questions of alimony and, indeed, the equities of the division of the marital assets, this separate property is itself not subject to division. The property which we have found to be outside the marital estate is property which is very personal to the party to whom it belongs and property which was in no sense generated by the marriage.

*Campbell v. Campbell*, 255 Ga. 461, 462 (339 SE2d 591) (1986).

The party seeking a division of contested property has the burden of proving that it is a marital asset. See *Dasher v. Dasher*, 283 Ga. 436, 437 (1) (658 SE2d 571) (2008); *Barber v. Barber*, 257 Ga. 488, 489 (3) (360 SE2d 574) (1987). "Property does not become a marital asset simply because one of the spouses obtains it during the course of the marriage." *Dasher*, 283 Ga. at 436 (1) (citation and punctuation omitted). Thus, for example,

4

[a] personal injury claim settlement, to the extent that it represents compensation for pain and suffering and loss of capacity is peculiarly personal to the party who receives it. . . . However, to the extent that the settlement amount represents compensation for medical expenses or lost wages during the marriage, the settlement may be considered an asset of the marriage.

*Campbell*, 255 Ga. at 462.

The parties have not cited, and research has not revealed, any Georgia appellate decisions directly addressing whether some or all of a lump-sum VA disability payment received while married may be considered a marital asset. Under federal law, however, VA benefits "shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." 38 USC § 5301 (a) (1); see also 38 USC § 101 (1) (defining "Secretary" as the "Secretary of Veterans Affairs" and "Department" as the VA). And courts in several other jurisdictions have determined that 38 USC § 5301 (a) (1)'s anti-attachment clause prohibits categorizing VA disability benefits — including lump-sum retroactive benefits — as a marital asset. See *Stacy v. Stacy*, 97 Mass. App. Ct. 160, 161, 165-168, 144 NE3d 899 (2020) (holding that 38 USC § 5301 (a) (1) prevents a

lump-sum payment for retroactive VA disability benefits from inclusion in the marital estate for purposes of equitable distribution); *Strong v. Strong*, 300 Mont. 331, 333, 339-340, 8 P3d 763 (2000) (concluding that, under 38 USC § 5301 (a), a lump-sum settlement for back disability payments awarded by the VA to the husband during his marriage was his separate non-marital property); see also, e.g., *In re Marriage of Wojcik*, 362 Ill. App. 3d 144, 159, 838 NE2d 282 (2005) (because 38 USC § 5301 (a) (1) exempts VA disability benefits from any legal process, they "may not be divided directly or used as a basis for an offset" during divorce proceedings); *In re Marriage of Howell*, 434 NW2d 629, 633 (II) (Iowa 1989) (under former 38 USC § 3101, the predecessor to 38 USC § 5301, veteran's disability benefits "are statutorily exempt from all claims other than claims of the United States, and are not divisible or assignable" in divorce actions); *Gray v. Gray*, 1996 OK 84, 922 P2d 615, 617, 619 (I) (1996) (the husband's VA disability benefits "were his own separate property" under 38 USC § 5301 (a)); *Griffith-Ball v. Ball*, No. M2020-00509-COA-R3-CV, 2022 Tenn. App. LEXIS 186, at *8-9 (II) (A) (May 13, 2022) (38 USC § 5301 (a) (1) "generally prevents dividing VA disability benefits as marital property" in a divorce); *Pfeil v. Pfeil*, 115 Wis. 2d 502, 505-506, 341 NW2d 699 (1983) (under the predecessor to 38 USC § 5301, VA disability benefits "are not to be divided between

6

spouses in a divorce action and not to be made the basis for an offsetting or compensatory award to the spouse of the disabled veteran receiving the service-connected disability award"); but see *In re Marriage of Landis*, 200 Ore. App. 107, 111-112, 113 P3d 456 (2005) (concluding, without addressing 38 USC § 5301, that federal law does not preclude the division of lump-sum veterans' disability benefits upon divorce).

Because we find those decisions to be persuasive, we hold that the trial court properly concluded that Joseph's VA disability benefits award was non-marital property and affirm its ruling in that regard. As our ruling on this issue rests on federal law, we need not address Karrie's contention that application of Georgia's "analytical approach" would lead to a different result, pretermitting whether it would apply here absent controlling federal law. And while Karrie also argues that the federal Uniformed Services Former Spouses' Protection Act, 10 USC § 1408, does not expressly bar inclusion of Joseph's award in the marital estate, that issue is irrelevant to our analysis, given our ruling that division of the benefits is independently barred by 38 USC § 5301 (a) (1).[1]

---

[1] See, e.g., *Strong*, 300 Mont. at 334-340; see also generally *Phillips v. Phillips*, 347 Ga. App. 524, 528-529 (3) (820 SE2d 158) (2018) (explaining that 10 USC § 1408 exempts from inclusion in marital property the amount of a veteran's

2. Karrie also contends that the evidence was insufficient to support the trial court's finding that she misappropriated $70,935.26 from Joseph's lump-sum payment. We agree in part, insofar as the evidence showed that Karrie misappropriated only $50,000 from Joseph's separate assets.

"In the appellate review of a bench trial, we will not set aside the trial court's factual findings unless they are clearly erroneous, and this Court properly gives due deference to the opportunity of the trial court to judge the credibility of the witnesses. But when a question of law is at issue, we review the trial court's decision de novo." *Spruell v. Spruell*, 356 Ga. App. 722, 724 (848 SE2d 896) (2020) (citation and punctuation omitted). Joseph's testimony that Karrie withdrew $50,000 from his bank account and kept it without his authorization — which was corroborated by the parties' bank statements showing the $50,000 withdrawal and corresponding deposit — was sufficient to support the trial court's finding to that effect, which we therefore affirm. See id.

The trial court's finding that Karrie misappropriated an additional $20,935.26, however, is another matter. Joseph testified that the $60,000 he authorized Karrie to

---

retirement income that the government deducts due to a waiver of such income that the veteran must make to receive disability benefits, a situation not present here).

8

withdraw included $20,000 that was to be invested in stocks. And Karrie similarly testified that she deposited $20,000 from the money Joseph authorized her to withdraw into "a joint investment account." She further testified that she withdrew "approximately half" of the money in the investment account in 2018, when she retained an attorney and "bought a couple [of] things."[2]

That evidence was sufficient to show only that Joseph made a gift of $20,000 to the marital estate for the parties' joint use and/or investment, and not that Karrie had no right to the money. Moreover, our review of the record reveals no basis for the trial court's addition of $935.26 to the $20,000 that Joseph testified he authorized Karrie to invest in stocks. Consequently, we reverse the trial court's ruling that Karrie misappropriated $20,935.26 of Joseph's assets and remand this case for the trial court to, at a minimum: (i) re-calculate the marital estate subject to equitable division by including in the estate the $20,000 earmarked for investing in stocks; (ii) explain the basis, if any, for its addition of $935.26 to that amount; and (iii) make a new ruling on the equitable division of the re-calculated marital estate. See *Payson*, 274 Ga. at

---

[2] Two brokerage account statements admitted into evidence show that an investment account in Karrie's name had a balance of $15,850.15 on March 31, 2019 (three days after Karrie filed for divorce), and $0 on July 31, 2019. Evidence admitted during the bench trial did not establish whether this account was the same "joint investment account" discussed in Karrie's testimony.

233 (1) (b) (explaining that (i) an appellate court's "invalidation of a portion of the factfinder's allocation of marital property works a change in matter of substance regarding the allocation of marital property and requires the factfinder to re-examine its equitable division of marital property"; and (ii) thus, "even if the error is limited to one item of property, the factfinder's allocation of economic resources must be determined de novo" because "a party's non-marital property is a factor that may be considered in assessing the equities of the division of marital property") (citation and punctuation omitted).

Our ruling is not intended to limit the scope of the trial court's inquiry on remand, insofar as any additional issues may be relevant to the equitable division of the re-calculated marital estate, including the extent to which Karrie may have withdrawn marital assets in the investment account during the pendency of this divorce.[3] See generally *Mallard v. Mallard*, 297 Ga. 274, 278 (773 SE2d 274) (2015) ("[T]he equitable division of marital property is at the discretion of the trier of fact, and such discretion is broad. So too, an equitable division of marital property does not necessarily mean an equal division, but rather a fair one, and in making such determination, the trier of fact should consider all of the relevant circumstances.")

---

[3] See note 2, above.

10

(citation omitted). It is for the trial court to determine, after consulting with the parties, whether additional briefing, an additional hearing, or both may be warranted to comply with our directives.

*Judgment affirmed in part and reversed in part, and case remanded with direction. Doyle, P. J., and Gobeil, J., concur.*