25CA0544 Marriage of Martin 04-30-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0544
El Paso County District Court No. 23DR31739
Honorable Catherine Mitchell Helton, Judge

---

In re the Marriage of

Angela D. Martin,

Appellee,

and

Richard J. Martin,

Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE WELLING
Tow and Lipinsky, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 30, 2026

---

Cage Lewis Weiman, LLC, Jamie L. Cage, Allyson C. Beyer, Glendale, Colorado, for Appellee

McClintock Criminal Defense, P.C., Theodore P. McClintock, Colorado Springs, Colorado, for Appellant

¶ 1     Richard J. Martin (husband) appeals the division of marital property and maintenance portions of the permanent orders entered in connection with the dissolution of his marriage with Angela D. Martin (wife).  He also asserts that the district court didn't provide him due process when it placed time limits on the permanent orders hearing.  We affirm.

## I.     Background

¶ 2     The parties married in 1993.  During the marriage, husband served in, and retired from, the military.  Based on his military service, husband received military retirement benefits and Veterans' Affairs disability benefits (VA disability benefits).

¶ 3     In 2016, husband started his own business selling homes and providing property management services.  Husband owned one hundred percent of the business.  The parties' adult son joined the enterprise as an employee and worked to grow the business's property management side.

¶ 4     Following a permanent orders hearing, the district court dissolved the marriage and made the following relevant findings:

- Husband was the sole owner of his business.

- Wife's expert, who valued husband's business at $294,500, was credible. He explained the numbers he used, his sources were reliable, and his method of valuation was appropriate.

- Husband's expert, who opined that the business was worth $62,000, valued the business "from the perspective of [it] being sold now," which was "not the situation" because husband testified that he wanted to keep the business.

- Husband testified that he couldn't work as much as he once did and would like to slow down, but no evidence suggested he would no longer be a part of the business or would sell it.

- The value of the business, which the court awarded to husband, was $294,500.

- Husband's annual income was $133,517 based on an average of his earnings in 2022 and 2023.

- Husband's VA disability benefits weren't marital property to be divided in permanent orders, but they could be

included as income in the court's determination of a maintenance award to wife.

## II.    Procedural Due Process

¶ 5     Husband first argues that the district court didn't allow him to fully present his case in violation of his procedural due process rights.  We disagree.

### A.    Standard of Review and Applicable Law

¶ 6     A meaningful opportunity to be heard is an inherent element of due process.  *See In re Marriage of Hatton*, 160 P.3d 326, 329 (Colo. App. 2007).  Parties are entitled to have sufficient time in which to orderly present their case.  *See In re Marriage of Salby*, 126 P.3d 291, 302 (Colo. App. 2005).

¶ 7     A district court's interest in administrative efficiency may not take precedence over a party's right to due process.  *In re Marriage of Goldin*, 923 P.2d 376, 382 (Colo. App. 1996).  The court, however, may set a time limit on a hearing from the outset and monitor the parties' use of their time during the hearing.  *See Maloney v. Brassfield*, 251 P.3d 1097, 1102-05 (Colo. App. 2010); CRE 611(a) ("The [district] court shall exercise reasonable control over the mode

and order of interrogating witnesses and presenting evidence so as to . . . avoid needless consumption of time.").

¶ 8     We review a district court's imposition of time limits at a trial for an abuse of discretion. *Maloney*, 251 P.3d at 1102. A court abuses its discretion when it acts in a manifestly arbitrary, unfair, or unreasonable manner, or when it misapplies the law. *In re Marriage of Herold*, 2021 COA 16, ¶ 5.

## B.     Additional Facts

¶ 9     The district court initially set the permanent orders hearing for two hours. Husband moved for a full day hearing, contending that the parties intended to call three experts and that the hearing would include several complicated issues, such as the valuation of husband's business, consideration of husband's military benefits and two marital properties, and wife's maintenance request. The court granted husband's motion, in part, and extended the hearing to four hours. In the parties' joint management trial certificate (JTMC), husband again asked for a full-day hearing, reiterating that the case was complex, involved experts, and required the testimony of the parties' adult son, who worked for husband's business; husband's doctor; an individual who recently sold a similar

business to that of husband; two other property managers/agents; and his own lengthy testimony. Following a review of the JTMC, the court extended the hearing to five hours. In doing so, the court recited husband's proposed evidence and witnesses relating to his business, but it also stated that "[a]dditional lay testimony will likely not be helpful to the [c]ourt."

¶ 10 At the outset of the hearing, husband's counsel again requested a full-day hearing. The court denied the request, informing husband's counsel that a full-day hearing amounted to about three hours and fifteen minutes per side, and the court had already granted the parties two hours and thirty minutes per side. Throughout the hearing, the court reminded husband's counsel of his remaining time on at least five occasions and even allowed husband's testimony to go slightly over his allotted time so that he could finish it.

¶ 11 The court also allowed the parties to submit written closing arguments, noting that although it granted husband some additional time, it didn't grant all the time he requested. And at the close of the hearing, the court allowed husband's counsel to make an offer of proof regarding the additional witnesses she would have

5

called on husband's behalf if the court had not placed a time limit on the parties' presentations of their cases. In that offer of proof, husband's counsel told the court that the two property manager/agents would have "talked about the industry and the level of work and extra time as both property managers and real estate agents" and that another witness "would have testified with respect to the sale of her business for $93,000, which is a company similar [to husband's] except they have [more property management clients]." Husband's counsel also stated that, if her time had not been limited, she would have expanded on husband's testimony because "there were things that we had rushed through that were important to him."

## C.   Analysis

¶ 12   Given the court's advance notice, its communication at the hearing, its flexibility to revise time limitations, and its allowance of written closing arguments, we aren't persuaded that the court violated husband's due process rights by limiting the time available for the hearing. *See Maloney*, 251 P.3d at 1103 (listing factors to determine whether the court's time limitation was improper).

¶ 13     Still, husband contends that he didn't receive enough time to present his case.  He argues that he wasn't able to demonstrate the proper valuation of his business because the court didn't afford him sufficient time to present the testimony of the witness who had recently sold a similar business or the testimony of other property manager/agents about the hours and amount of work involved in his profession.  But as the district court found, because no evidence suggested that husband intended to sell his business, testimony regarding the sale of a similar business wouldn't have been helpful to the court.  Moreover, the testimony of other property manager/agents would have been duplicative because husband and wife testified at length about how many hours husband and their son worked at the business.

¶ 14     Husband also argues he didn't have adequate time to thoroughly discuss his VA disability benefits and the reduction in the amount of those benefits once the dissolution proceedings were finalized.  Although husband included this information in his portion of the JTMC, he never informed the court that he lacked sufficient time to provide this information at the hearing nor did he address the reduced amount of VA disability benefits in his written

closing arguments. Thus, this contention doesn't change our conclusion that the time limitations that the court imposed didn't violate husband's due process rights.

¶ 15 In sum, the district court's time management didn't appear inflexible or unduly restrictive during the hearing. The court periodically reminded the parties of their remaining time, allowed husband to provide a summary of the evidence he was unable to present given the time limits, and permitted the parties to submit written closing arguments. *See id.* at 1103-05. Thus, the court's imposition of a time limit of two and a half hours per side didn't constitute an abuse of discretion. *See id.* at 1103.

### III. VA Disability Benefits

¶ 16 Husband next argues that the district court erred when it included his VA disability benefits as income when determining maintenance. We aren't persuaded.

### A. Standard of Review and Applicable Law

¶ 17 We review maintenance orders for an abuse of discretion but review de novo the legal standard applied by the court. *In re Marriage of Tooker*, 2019 COA 83, ¶ 12.

8

¶ 18    In determining maintenance, the court must calculate each party's gross income. *Id.* at ¶ 12. Gross income includes income "from any source," other than certain listed exceptions not applicable here, and specifically includes disability insurance benefits. § 14-10-114(3)(a)(I)(A), (8)(c)(I)(S), C.R.S. 2025.

## B.    Analysis

¶ 19    Husband argues that the court erred because the Uniformed Services Former Spouses' Protection Act (USFSPA), 10 U.S.C. § 1408, prohibits state courts from dividing or assigning VA disability benefits. But because the court didn't divide or assign his VA disability benefits when it included them in its income calculation, it did not err.

¶ 20    Military retirement benefits are generally distributable as marital property in a dissolution of marriage case. 10 U.S.C. § 1405; *In re Marriage of Hunt*, 909 P.2d 525, 530 (Colo. 1995). Distributable benefits, however, are limited to "disposable retired pay," which is defined at 10 U.S.C. § 1408(a)(4) to exclude disability pay. Thus, federal and Colorado cases interpreting the USFSPA hold that disability pay isn't subject to division as part of a marital property distribution. *See Howell v. Howell*, 581 U.S. 214, 220

(2017) (citing *Mansell v. Mansell*, 490 U.S. 581, 594-95 (1989)); *see also In re Marriage of Tozer*, 2017 COA 151, ¶ 13 (disability retirement is not disposable retired pay under the USFSPA and is not subject to division as marital property); *In re Marriage of Williamson*, 205 P.3d 538, 540 (Colo. App. 2009) (same); *In re Marriage of Franz*, 831 P.2d 917, 918 (Colo. App. 1992) (same).

¶ 21 Husband argues that *Howell* is instructive because it stands for the proposition that the USFSPA prohibits a state from treating VA disability benefits as divisible community property.

¶ 22 But husband misses an important distinction. *Howell* discusses only whether a court may divide or assign VA disability benefits when allocating marital property during a dissolution proceeding. Nothing in *Howell* or in the USFSPA addresses whether a state — by statute or judicial decision — may treat VA disability benefits as income for purposes of calculating a support obligation. Rather, *Howell* stated that a state court "remains free to take account of the contingency that some military retirement pay might be waived, or, as the petitioner himself recognizes, take account of reductions in value when it calculates or recalculates the need for

spousal support." *Howell*, 581 U.S. at 222 (citing *Rose v. Rose*, 481 U.S. 619, 630-34 (1987)).

¶ 23    Husband acknowledges that a division of this court held that VA disability benefits can be included when calculating a veteran-parent's income when determining the parent's child support obligation. *See In re Parental Responsibilities Concerning M.E.R-L.*, 2020 COA 173, ¶ 2 ("We conclude that the USFSPA does not prohibit including such benefits in a parent's gross income for child support purposes."). Still, he asserts that the same treatment of VA disability benefits when calculating a maintenance award isn't warranted because after the dissolution of a marriage, the veteran is no longer required to support the former spouse.

¶ 24    But the veteran is required to support the former spouse if the court determines the spouse has a need for maintenance, as the court did here. Moreover, husband cites no binding legal authority holding that the USFSPA prohibits states from including veteran's disability benefits in a veteran-spouse's income when calculating a maintenance obligation. Nor are we aware of any such authority.

¶ 25    To the contrary, Colorado case law explicitly allows a court to consider VA disability benefits when "determining the propriety and

amount of an award of spousal maintenance." *In re Marriage of Nevil*, 809 P.2d 1122, 1123 (Colo. App. 1991). And the overwhelming majority of state courts that have considered the issue have concluded that courts may consider military disability benefits when setting maintenance. *See In re Marriage of Morales*, 214 P.3d 81, 85 (Or. Ct. App. 2009) (collecting cases reaching this outcome); *Marriage of Strong v. Strong*, 2000 MT 178, 8 P.3d 763, 770 (2000) (same).

¶ 26    These courts reasoned that because "'Congress clearly intended veterans' disability benefits to be used, in part, for the support of veterans' dependents,' 'a state court is clearly free to consider post-dissolution disability income and order a disabled veteran to pay spousal support.'" *Strong,* 8 P.3d at 770 (citation omitted) (first quoting *Rose,* 481 U.S. at 631, and then quoting *Clauson v. Clauson,* 831 P.2d 1257, 1263 n.9 (Alaska 1992)); *but see Ex parte Billeck,* 777 So. 2d 105, 109 (Ala. 2000) (holding that federal law precludes courts from considering VA disability payments when awarding alimony).

¶ 27    Lastly, husband cites an unpublished court of appeals opinion, along with *Howell, Mansell,* and *Tozer,* to assert that state

12

trial courts lack subject matter jurisdiction to order veterans to pay spousal maintenance awards from VA disability benefits.  First, unpublished opinions announced by a division of this court have no precedential value.  *Patterson v. James*, 2018 COA 173, ¶ 40.  Moreover, with exceptions not applicable here, this court's policy prohibits citations to our opinions that are not selected for official publication.  Colo. Jud. Branch*, Court of Appeals Policy Concerning Citation of Opinions Not Selected for Official Publication* (2026), https://perma.cc/5AZZ-KSWL.)

¶ 28     Second, husband's argument continues to miss the mark.  The cases he cites stand for the proposition that VA disability benefits can't be divided or assigned, nor can state courts order that they be used to indemnify or reimburse a spouse for arrearages.  *See Howell*, 581 U.S. at 220; *Mansell*, 490 U.S. at 594-95; *Tozer*, ¶ 13.  But the district court didn't order husband to pay maintenance from his VA disability benefits, nor did it require him to indemnify or reimburse wife out of his VA disability benefits.  Rather, it considered the VA disability benefits — along with all of husband's other sources of income — to calculate husband's gross income for purposes of setting maintenance.  This was a proper consideration

13

under Colorado law. § 14-10-114(3)(a)(I)(A), (8)(c)(I)(S) (including disability benefits under the definition of income); *Nevil*, 809 P.2d at 1123.

## IV. Valuation of Husband's Business

¶ 29　　Husband asserts that the district court erred when it valued his business because it based its determination on husband's future earning potential from the business rather than its actual value. We aren't persuaded.

### A. Standard of Review and Applicable Law

¶ 30　　The court has latitude to equitably divide a marital estate based on the facts and circumstances of the case, and we won't disturb its decision absent a showing that the court abused its discretion. *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 28. "A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misconstrues or misapplies the law." *In re Marriage of Fabos*, 2022 COA 66, ¶ 16.

¶ 31　　When dividing marital property, the court determines the property's approximate current value. *In re Marriage of Wright*, 2020 COA 11, ¶ 4. In doing so, the court may select the valuation of one party over that of the other party or make its own valuation,

and we will affirm its decision if the value is reasonable in light of the evidence as a whole. *Medeiros*, ¶ 41; *In re Marriage of Krejci*, 2013 COA 6, ¶ 23 (recognizing that a valuation will be upheld "unless clearly erroneous").

## B. Discussion

¶ 32　Wife's proposed valuation of husband's business, which the district court adopted, was grounded in the evidence. The parties stipulated that wife's expert was qualified to offer opinions on business valuations. He valued husband's business at $294,000 using the capitalization of earnings method for an income approach and the seller's discretionary earnings method for the market approach, and he averaged the numbers he obtained through the two valuation methods. The expert explained that the seller's discretionary earnings method considers the earnings of the company, adding back wages paid to the owner to determine the total cash flow to the owner, and was an appropriate valuation for a business the size of husband's enterprise. The expert then subtracted reasonable officer compensation from the seller's discretionary earnings, explaining how he arrived at each number in his calculation. He then explained the market approach, using

15

the seller's discretionary earnings and averaging and weighing those earnings. He again explained his methodology and how he arrived at each number he used in his valuation.

¶ 33 The court found wife's expert credible, noting that he explained the numbers he used, his sources were reliable, and his methodology was appropriate.

¶ 34 Husband asserts that the district court erred and should have valued the business at $64,000, the amount his expert testified the business would sell for if it was sold on the date of the permanent orders hearing. But the district court didn't find this valuation reliable or appropriate because no evidence suggested that husband intended to sell the business. Rather, it found, with record support, that husband wanted to keep the business and eventually allow the parties' son to take it over someday. Based on this evidence and these findings, it wasn't an abuse of discretion for the district court to decline to base its valuation on the business's potential sales price.

¶ 35 Husband further argues that the "seller's discretionary earnings" method essentially converted his future earnings into marital property to be divided as part of the marital estate. Thus,

16

he argues, the court didn't value the business as of the date of the permanent orders hearing. And he asserts that the "personal goodwill" he brought to the company isn't a commodity that can be quantified or divided. But we discern no legal error in the valuation methodology the court adopted. Instead, husband's arguments amount to a request that this court reweigh the credibility of the parties' witnesses and evidence presented, which we can't do. *See In re Marriage of Thorburn*, 2022 COA 80, ¶ 49 ("[C]redibility determinations and the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom, are matters within the sole discretion of the [district] court."); *In re Marriage of Farr*, 228 P.3d 267, 270 (Colo. App. 2010) (the district court's resolution of conflicting evidence is binding on review).

¶ 36　　Based on the evidence and arguments before the court, the court's decision to calculate the value of the business using wife's expert testimony was a reasonable exercise of its discretion. We therefore won't disturb that valuation. *See Krejci*, ¶¶ 23, 25.

## V.　Disposition

¶ 37　　We affirm the judgment.

JUDGE TOW and JUDGE LIPINSKY concur.