NO.   94-479

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

IN RE THE MARRIAGE OF
KENNETH D. STONE,

      Petitioner and Appellant,

  and

BARBARA JEAN STONE,

      Respondent and Respondent.

FILED

DEC 20 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM:   "District Court of the Eighth Judicial District,
              In and for the County of Cascade,
              The Honorable John M. McCarvel, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          Joan E. Cook; Miller & Cook, Great Falls, Montana

      For Respondent:

          K. Dale Schwanke; Jardine, Stephenson, Blewett &
          Weaver, Great Falls, Montana


                      Submitted on Briefs:  June 8, 1995
                            Decided:  December 20, 199!

Filed:

_____
              Clerk

Justice W. William Leaphart delivered the Opinion of the Court

Kenneth Stone appeals from the September 21, 1994, order of the Eighth Judicial District Court, Cascade County, denying his motion to modify his maintenance obligation. We affirm.

We restate the issues raised on appeal as follows:

1. Did the District Court violate the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408, in adopting the maintenance provision in the parties' settlement agreement in its award of maintenance to Barbara?

2. Did the District Court err in authorizing maintenance which may potentially amount to more than 50 percent of Kenneth's disposable income, as calculated under 10 U.S.C. § 1408?

Kenneth Stone (Kenneth) and Barbara Stone (Barbara) were married in 1959 and divorced in 1985. The District Court entered its Findings of Fact, Conclusions of Law and Decree of Dissolution on March 28, 1985, reserving the maintenance and property settlement issues. In April of 1985, Kenneth and Barbara entered into a property settlement agreement, pursuant to § 40-4-201, MCA. The agreement divided the marital estate and provided that Kenneth would pay maintenance to Barbara. Specifically, the maintenance provision stated that "Husband shall pay to Wife one-half of his gross retirement benefits through the Clerk of the Court, Cascade County, State of Montana. Said sum shall be paid by the fifth (5th) day of each month and shall be increased as the cost of living increases are received." In an attempt to clarify this maintenance provision, an addendum was added, which read in part:

> The term "retirement benefits" for this purpose includes the gross payments receivable by Husband from the United States Air Force and from the Veterans' Administration in

2

> <u>any</u> <u>combination</u>; the present system reflects a gross retirement benefit, less that portion which is paid by the Veterans' Administration, with the balance being payable through the U.S. Air Force Retirement Center. Husband agrees that the Court may make and enter an Order obligating Husband to make the assignment agreed upon herein pursuant to Section 40-4-207, Montana Codes Annotated. <u>The provision herein for division of these gross retirement benefits shall not be modifiable.</u> [Emphasis added.]

Both parties intended the term "retirement benefits" to include retirement pay and Veterans' Administration disability pay, and the purpose of the addendum was to clarify that disability pay was to be included. When Kenneth and Barbara signed the property settlement agreement, and the addendum, both were represented by counsel.

In 1993, after paying maintenance as required under the agreement for more than eight years, Kenneth moved the court to modify the amount of maintenance. Kenneth argued the maintenance provision and addendum violated federal law. Specifically, he asserted that the inclusion of disability pay in the amount to be paid as maintenance was contrary to the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408. The District Court denied Kenneth's motion to modify the maintenance award noting that Kenneth and Barbara, having been fully advised by counsel, entered into a voluntary settlement agreement which included the disputed maintenance provision. Further, the District Court determined that Kenneth was estopped from contesting the amount of maintenance he had agreed to pay. Kenneth appeals from the District Court's determination.

1. Did the District Court violate the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408, in adopting the maintenance provision in the parties' settlement agreement in its award of maintenance to Barbara?

Kenneth alleges that the maintenance provision in the settlement agreement treats his veterans' disability benefits as marital property and divides the benefits in violation of the Uniformed Services Former Spouses' Protection Act (the Act) and the United States Supreme Court's interpretation of the Act in Mansell v. Mansell (1989), 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675. In Mansell, the Supreme Court held that "under the Act's plain and precise language, state courts have been granted the authority to treat disposable retirement pay as community property; they have not been granted the authority to treat total retirement pay as community property." Mansell, 490 U.S. at 589.

Here, however, we note that Kenneth and Barbara entered into a voluntary settlement agreement, pursuant to § 40-4-201, MCA, in which, separate from the division of the marital property, they agreed to divide the total amount of Kenneth's retirement pay as maintenance. See Marriage of Blair (Mont. 1995), 894 P.2d 958, 964, 52 St.Rep. 401, 405 (Leaphart, J., concurring). Section 40-4-201(2), MCA, provides:

> In a proceeding for dissolution of marriage or for legal separation, the terms of the separation agreement, except those providing for the support, custody, and visitation of children, are *binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the separation agreement is unconscionable.*
>
> . . .

4

(5) **Terms** of the agreement set forth in the decree are enforceable by all remedies available for enforcement of a judgment, including contempt, and are *enforceable as contract terms.* [Emphasis added.]

A separation agreement is binding on the court unless it provides for the support, custody, or visitation of children or unless the court finds the agreement to be unconscionable. Section 40-4-201(2), MCA. Here, the custody, support, and visitation of children were not at issue, nor did the court find the agreement to be unconscionable. Thus, the District Court was required by law to abide by the maintenance agreement of the parties. Further, we note that at the discretion of the parties the terms of the separation agreement can be set forth in the decree, or the decree can merely identify that a separation agreement exists and that its terms are not unconscionable. Section 40-4-201(4), MCA.

Although Kenneth's and Barbara's separation agreement was incorporated into the decree, it was not required to be incorporated. Thus, contrary to the dissent's suggestion that the court, once it incorporates the agreement into the decree "has, itself, divided the disability benefits," the court has not done the "dividing" of benefits, rather, the parties have. First of all, there is no requirement that the terms of the agreement be incorporated into the decree; that decision is left to the discretion of the parties. Secondly, even if the parties elect to have the terms incorporated into the decree, the court has no discretion to engage in any sua *sponte* division of assets in the context of maintenance or property distribution. Rather, the court, absent a finding of unconscionability, has no choice but to

5

honor the parties' agreement. Section 40-4-201(2), MCA. That the terms of the maintenance agreement are binding independently from the decree is illustrated by the fact that under Montana law, even if the parties choose not to have the terms incorporated into the decree, the terms are, nonetheless, enforceable as contract terms. Section 40-4-201(5), MCA; see also Marriage of Lorge (1984), 207 Mont. 423, 429, 675 P.2d 115, 117 (stating that where the terms of an agreement are not set forth in the decree the agreement retains the status of a private contract). In addition, if the parties choose to incorporate the agreement into the decree the terms of the agreement are enforceable by contempt as well as in contract. Section 40-4-201(5), MCA.

In the instant case, the agreement and the addendum clearly intended to include Kenneth's Veterans' Administration disability payments within the maintenance award. This voluntary contractual agreement between the parties does not purport to assign Kenneth's veterans' disability benefits to Barbara. In any event, Kenneth and Barbara had the power to enter into the settlement agreement regardless of the Act. In confronting this issue, the Idaho Court of Appeals observed that:

> Richard additionally asserts that the [court's order] is erroneous on the basis that it essentially divides his disability pay, an item of his separate property which is not divisible. See Mansell v. Mansell, 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989). [Citation omitted.] This argument is misplaced. The parties negotiated for and mutually agreed to a division of the military retired pay which granted Elisabet a specific monthly sum. . . The two supplemental orders issued by the court did not alter this agreed-to division of the asset, but served simply to enforce it.

6

McHugh v. McHugh (Idaho Ct. App. 1993), 861 P.2d 113, 115.

In Mansell, the parties also had entered into a property settlement agreement. Mansell, 490 U.S. at 585-86. However, the Supreme Court's analysis relies on the preemption of California's community property law by the Act. While the Act prohibits state courts and state legislatures from dividing veterans' disability benefits, neither the Act nor the Supreme Court's opinion in Mansell clearly preempt the parties' ability to contract.

There is no language in the Act, or in Mansell, which leads to the inevitable conclusion that the individual's freedom to contract has been suspended. Even though there was a property settlement agreement in Mansell, the Supreme Court did not hold that the parties were not free to contract. Rather, the Court held that state courts "have not been granted the authority to treat total retirement pay as community property." Mansell, 490 U.S. at 589. The Supreme Court's conclusion that a state court's division of veterans' disability pay, pursuant to community property law, is preempted by the Act is supported by the Court's analysis. The Court, however, did not analyze the Act in the context of contract law as opposed to preemption law. Thus, the validity or invalidity of that agreement was not the basis for the Court's holding.

The maintenance provision at issue in Kenneth's and Barbara's separation agreement, which is separate from the property division portion of the agreement, provides that "[h]usband shall pay to Wife one-half of his gross retirement benefits." At the time of the agreement, both parties agreed that this would include his

7

veterans' disability pay. In addition, the maintenance provision regarding Kenneth's gross retirement benefits clearly states that it "shall not be modifiable." The District Court merely required Kenneth to do that which he, with the knowledge of the law and advice of counsel, had agreed to do. The Act may insulate disability benefits from distribution by the court or through community property law. However, that preemption does not mean that the veteran is stripped of his right to enter into a contract of his own free will. Kenneth did exactly that and should be required to honor that agreement.

2. Did the District Court err in authorizing maintenance which may potentially amount to more than 50 percent of Kenneth's disposable income, as calculated under 10 U.S.C. § 1408?

Kenneth next contends that an award of maintenance that potentially exceeds 50 percent of his disposable income violates the Act. Kenneth misreads the federal statute.

The section of the Act referred to by Kenneth is 10 U.S.C. § 1408(e)(1) which states that "[t]he total amount of the disposable retired or retainer pay of a member payable under subsection (d) may not exceed 50 percent of such disposable retired or retainer pay." (Emphasis added.) This referenced subsection, 10 U.S.C. § 1408(d), allows the garnishment of a service-person's pay in order to satisfy a child support, maintenance, or property settlement judgment. Read together, these sections state that the federal government will not garnish more than 50 percent of a service-person's disposable retirement pay, even if the judgment outstanding exceeds that amount. Nothing in the Act prohibits a

8

state court from approving a maintenance or custody award in any amount. Accordingly, we hold that the District Court did not err in upholding the maintenance provision in the parties' settlement agreement.

Affirmed.

_____
                                    Justice

We concur.

_____
        Chief Justice

_____

_____

_____
        Justices


Justice Charles E. Erdmann did not participate.

Justice Terry N. Trieweiler dissenting

I dissent from the majority opinion.

In *Mansell v. Mansell* (1989), 490 U.S. 581, 109 S. Ct. 2023, 104 L. *Ed. 2d 675,* the United States Supreme Court held that state courts are preempted by federal law from dividing veterans' disability benefits and awarding any portion of them to the former spouse of a disabled veteran. It did not matter in that case that the parties before the court had also consented to the division of disability benefits which the Supreme Court held could not be divided.

The following facts were the foundation for the *Mansell* decision:

> Their marriage ended in 1979 with a divorce decree from the Merced County, California, Supreme Court. . . Mrs. Mansell and Major Mansell entered into a property settlement which provided, in part, that Major Mansell would pay Mrs. Mansell 50 percent of his total military retirement pay, including that portion of retirement pay waived so that Major Mansell could receive disability benefits. Civ. No. 55594 (May 29, 1979). In 1983, Major Mansell asked the Superior Court to modify the divorce decree by removing the provision that required him to share his total retirement pay with Mrs. Mansell. The Superior Court denied Major Mansell's request without opinion.

*Mansell, 490* U.S. at 585-86.

In other words, the California Superior Court treated that retiree's disability benefits as community property because he and his former spouse agreed that they could be treated as community property. However, it did not matter to the Supreme Court that a property settlement agreement formed the basis for the California Court's decision. Whether or not based on an agreement, it looked

10

to the substance and effect of the California Court's decree and held that:

> For the reasons stated above, we hold that the Former Spouses' Protection Act does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits.

*Mansell*, 490 U.S. at 594-95.

The majority opinion overlooks the fact that a separation agreement, by itself, has no binding effect until approved by the district court and made part of the district court's decree. Section 40-4-201, MCA. Once the court makes terms which divide disability benefits part of its decree, it has, itself, divided disability benefits, and it cannot do so.

If an underlying agreement between the parties made any difference, a different result would have been required in *Mansell* where an agreement was also the basis for the decree which the court said could not be enforced. For example, in *McMahan v. McMahan* (Fla. Dist. Ct. App. 1990), 567 So. 2d 976, the Florida Appellate Court reversed a trial court judgment which adopted a settlement agreement which permitted a wife to receive part of a husband's **military** disability benefits. That court held that: "[W]e reverse in that case law has now convincingly established that no portion of **a military** pension which is attributable to disability is subject to distribution for the benefit of the other spouse." *McMahan,* **567** So. 2d at 978.

Unlike the majority, the Florida Court was not persuaded that the source of the court's judgment was an agreement freely entered

into between the parties. In language relevant to this case, it observed that:

> Finally, appellee's argument that this case is distinguishable from federal and state precedent reaching a contrary result, because it involves a contract between parties, is without merit. *Mansell* also involved a property settlement agreement which required Mr. Mansell to pay his wife 50 percent of his total retirement pay, which necessarily included a portion of disability benefits. Despite the existence of this contract, the United States Supreme Court determined that federal law controlled, and that the wife was not entitled to any portion of the military retirement pay that constituted disability.

*McMahan.* 567 So. 2d at 979.

The majority attempts to distinguish *Mansell* on the basis of its holding that the Uniformed Services Former Spouses' Protection Act preempts California's community property law. However, what the majority overlooks is that the division of property in *Mansell* was not based on California's community property law. It was based on an agreement between the parties. Therefore, the fact that California is a community property state and Montana is not makes no difference.

Of course, the Supreme Court, in *Mansell*, did not hold that the parties are not free to contract. What the Court held is that the state courts in California could not enforce, by decree, provisions of a property settlement between parties which violated the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408.

Based on the majority's rationale, the U.S. Supreme Court could not have arrived at the conclusion that it arrived at in

12

*Mansell*. It would have to have held that in spite of the Act the parties had to do what they had agreed to do--divide the husband's military disability benefits.

The similarities between *Mansell* and the circumstances in this case are striking. The only difference is that instead of Kenneth Stone's disability benefits being distributed as property, they have been distributed as maintenance. However, if dividing veterans' disability benefits is impermissible, it cannot be legitimized by simply disguising the property distribution as a maintenance award. To hold otherwise is to ignore the substance of the District Court's decree and sanction a shell game, the purpose of which is to circumvent laws intended for the protection of disabled veterans.

For these reasons, I dissent from the majority opinion. I would reverse the order of the District Court and hold that its decree approving a separation agreement which effectively divided veterans' disability benefits violated the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408, and therefore, was preempted by federal law.

_____
Justice

Justice James C. Nelson joins in the foregoing dissenting opinion.

_____
Justice

13