No. 04-416

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 242

IN RE THE MARRIAGE OF
RODNEY THOMAS LUTES,

      Petitioner and Respondent,

  v.

CYNTHIA JANE LUTES,

      Respondent and Appellant.


APPEAL FROM:    District Court of the Eighth Judicial District,
                       In and for the County of Cascade, Cause No. BDR 96-472
                       The Honorable Julie Macek, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

            Joan E. Cook, Attorney at Law, Great Falls, Montana

      For Respondent:

            Daniel L. Falcon, Falcon Lester & Schaff, Great Falls, Montana


                                 Submitted on Briefs:  September 26, 2005

                                       Decided:  September 27, 2005


Filed:

                                 _____
                                            Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1  Cynthia Jane Lutes (Cynthia) appeals from the denial by the Eighth Judicial District Court, Cascade County, of her motion that Rodney Thomas Lutes (Rodney), her ex-husband, be held in contempt for his failure to pay to Cynthia a portion of his Veteran's Administration (VA) disability pay as a division of the marital estate, as agreed to and made a part of their Decree of Dissolution of Marriage.  We affirm.

## ISSUES

¶2  We consider the following issues:

¶3  1.  Whether the Order refusing to hold Rodney in contempt is an appealable order under § 3-1-523, MCA.

¶4  2.  Whether the District Court blatantly abused its discretion in refusing to hold Rodney in contempt for his failure to pay the VA disability benefits, in light of Montana and federal authority preempting state courts from including VA disability benefits in the equitable division of a marital estate.

## FACTUAL AND PROCEDURAL BACKGROUND

¶5  Cynthia and Rodney divorced on October 29, 1997, when the District Court entered a Decree of Dissolution.  The Decree incorporated a Property Settlement Agreement and an Addendum thereto (together the "Agreement"), executed on September 12, 1997, and October 7, 1997, respectively.  The Agreement provided that Cynthia would receive a portion of Rodney's Air Force retirement benefits and a portion of Rodney's VA disability benefits as a part of the equitable distribution of their marital estate.  Pursuant to the

2

Agreement, the Department of Defense was to pay the share of retirement benefits directly to Cynthia and Rodney was to pay the share of VA disability benefits to Cynthia on a monthly basis. Neither the Agreement nor the Decree provided for any maintenance or child support payments, and custody and visitation were not at issue.

¶6 Rodney first failed to make a number of the VA disability payments to Cynthia in 2002. He made only partial payments of the VA disability benefits through the rest of 2002 and all of 2003, and he stopped making those payments altogether in 2004. Rodney remained current on all other payments under the Agreement. Cynthia brought this action in the District Court, seeking to hold Rodney in contempt for failing to make the VA disability payments pursuant to the Agreement. The District Court held a hearing at which the parties presented evidence and made oral arguments. The District Court denied the request for contempt and Cynthia appeals.

## STANDARD OF REVIEW

¶7 Contempt orders in family law cases may be appealed "only when the judgment or order appealed from includes an ancillary order that affects the substantial rights of the parties involved." Section 3-1-523(2), MCA. Where we review a district court's decision *not* to find a party in contempt, we will not reverse the decision absent a blatant abuse of discretion. *In Re Marriage of Baer,* 1998 MT 29, ¶¶ 44-45, 287 Mont. 322, ¶¶ 44-45, 954 P.2d 1125, ¶¶ 44-45. We review a district court's legal conclusions *de novo*, seeking to determine whether the court correctly interpreted the law. *Marriage of Strong v. Strong*, 2000 MT 178, ¶ 11, 300 Mont. 331, ¶ 11, 8 P.3d 763, ¶ 11 (citing *In re Marriage of Barker*

3

(1994), 264 Mont. 110, 113, 870 P.2d 86, 88)

## DISCUSSION

¶8 We first determine whether the Order denying the request for contempt is an appealable order. This analysis requires us to determine whether the court's Order denying the Motion for Contempt includes an ancillary order affecting the substantial rights of the parties. Section 3-1-523(2), MCA.

¶9 The District Court denied Cynthia's Motion for Contempt because the District Court, following our decision in *Strong*, did not have "the authority to enforce the Property Settlement Agreement between the parties as it concerns the division of [Rodney's] military disability benefits." In *Strong* we recognized that federal law, specifically the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408 (USFSPA), and 38 U.S.C. § 5301 (providing that VA benefits are exempt from the claims of creditors), preempts the state from distributing VA benefits as a part of the marital estate. *Strong*, ¶ 27 (following *Mansell v. Mansell* (1989), 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675); *see also In re Marriage of Murphy* (1993), 261 Mont. 363, 862 P.2d 1143.

¶10 We generally reject the direct appeal of a contempt order in a dissolution of marriage case that goes purely to the district court's contempt power and does not "adjudicate any ancillary matters falling within [the court's] continuing jurisdiction over the rights of the parties . . . ." *In re Marriage of Grounds v. Coward*, 2000 MT 128, ¶ 9, 300 Mont. 1, ¶ 9, 2 P.3d 822, ¶ 9. Direct appeal of a contempt order is appropriate only where "a court in a single judgment, issues an order of contempt . . . and an ancillary order within its jurisdiction

4

in determining the rights of the parties . . . ." *Grounds*, ¶ 6 (emphasis deleted).

¶11    Here the District Court ruled on Cynthia's request for contempt and in so doing adjudicated additional matters relating to federal preemption of the division of VA disability benefits in the Agreement and Decree. The District Court's determination affects the substantial rights of the parties under the Agreement and Decree, most significantly Cynthia's, as the Order refusing to hold Rodney in contempt does not stand as a mere "lone contempt order." *See Lee v. Lee*, 2000 MT 67, ¶ 37, 299 Mont. 78, ¶ 37, 996 P.2d 389, ¶ 37 (a "lone contempt order" may not be reviewed on direct appeal).  Instead, the District Court's denial of the contempt depends on, or is "ancillary" to, the District Court's ruling on federal preemption affecting the enforceability of the Agreement and Decree.  We therefore conclude that the District Court's Order denying Cynthia's Motion for Contempt is appealable, as it includes an ancillary order affecting the parties' substantial rights. *Grounds*, ¶ 6*; Lee*, ¶ 37.

¶12    We next must determine whether the District Court's refusal to hold Rodney in contempt constituted a "blatant abuse of discretion." *Baer,* ¶¶ 44-45.  We evaluate whether the trial court acted arbitrarily or exceeded the bounds of reason resulting in substantial injustice.  *State v. Kearney*, 2005 MT 171, ¶ 12, __ Mont. __, ¶ 12,  __ P.3d __, ¶ 12.  The District Court's Order denying the request for contempt hinges on its legal conclusions regarding federal preemption and our decision in *Strong*.  Ultimately, then, we must determine *de novo* the legal question of whether the District Court correctly interpreted

*Strong*, as the refusal to hold Rodney in contempt turns on whether federal law preempts the division of VA disability benefits as a part of the marital estate.

¶13 The evidence shows that the Agreement and Decree required Rodney to pay VA disability benefits as a part of the equitable distribution of the marital estate. The evidence shows that Rodney entered into such Agreement and Decree voluntarily, and willingly made those payments for several years. The evidence further shows that Rodney stopped making those payments. On these facts alone, the refusal to hold Rodney in contempt might appear to be a blatant abuse of discretion. As it turns out, however, the federal preemption trumps the District Court's authority to enforce Rodney's obligation to pay the VA disability benefits as part of the equitable distribution of the marital estate under the Agreement and Decree.

¶14 As we noted above, the District Court denied Cynthia's Motion for Contempt based on *Strong,* in which we held that federal law preempts the state from distributing VA benefits as a part of the marital estate. *Strong*, ¶ 27. We agree. Therefore, although the evidence showed that Rodney had violated the terms of the Agreement, and hence the Decree, by withholding payment of Cynthia's share of his VA disability benefits, federal law preempts the District Court from enforcing the Decree in regard to division of those benefits. Given the weight of authority here, we must conclude that the District Court acted within its discretion in refusing to hold Rodney in contempt.

¶15 Cynthia argues nevertheless that Rodney should be held in contempt because he voluntarily entered into the Agreement to pay the VA disability benefits and he should,

therefore, be forced to honor the Agreement and be estopped from attacking it. Relying primarily on *In re Marriage of Stone* (1995), 274 Mont. 331, 908 P.2d 670, Cynthia argues that the federal preemption found in *Strong* does not extend to preempt enforcement of Rodney's obligation to pay VA disability benefits under the Agreement and Decree in this case. Cynthia's reliance on *Stone* is misplaced.

¶16   The District Court concluded that our decision in *Strong* effectively overruled *Stone*. We agree. *Stone* involved a property settlement agreement whereby the parties agreed to use the proceeds from the husband's VA disability benefits to pay maintenance. In upholding the District Court's denial of the husband's motion to modify his maintenance obligations based upon the provisions of the USFSPA, we concluded in *Stone* that the voluntary contractual agreement between the parties did "not purport to assign [husband's] veterans' disability benefits to [wife]." *Stone*, 274 Mont. at 335, 908 P.2d at 673. We held that though federal law "prohibits state courts . . . from dividing veterans' disability benefits, neither the Act nor the Supreme Court's opinion in *Mansell* clearly preempt the parties' ability to contract." *Stone*, 274 Mont. at 335-36, 908 P.2d at 673. In *Strong*, however, we concluded that the district court did *not* have the authority to enforce a property settlement agreement provision the object of which was to distribute VA benefits as part of the marital estate. *Strong*, ¶ 27. We said that "federal law preempts state courts from exercising jurisdiction in a dissolution proceeding over any military benefit that is not 'disposable retired pay.'" *Strong,* ¶ 23 (emphasis deleted).

¶17 We made no distinction in *Strong* between the exercise of jurisdiction in cases involving maintenance and cases involving the division of the marital estate. While we did not explicitly state in *Strong* that we were overruling *Stone*, that conclusion is inescapable. In the wake of *Strong*, a district court may not order the division or allocation of VA benefits to satisfy any marital obligation, be it maintenance or division of the marital estate, regardless of whether the parties previously agreed to do so in a property settlement agreement. We therefore now expressly hold that *Stone* was overruled by *Strong*.

¶18 Cynthia further argues on appeal that Rodney should be estopped from claiming the invalidity of the Agreement. She failed, however, to present this argument to the District Court. A party who wishes to rely on an estoppel argument must plead it; failure to do so deems the argument waived. *Williard v. Campbell* (1932), 91 Mont. 493, 503, 11 P.2d 782, 786. This Court will not address issues raised for the first time on appeal. *State v. Wetzel*, 2005 MT 154, ¶ 13, 327 Mont. 413, ¶ 13, 114 P.3d 269, ¶ 13.

¶19 While we conclude here that federal preemption precludes the state from treating Rodney's VA disability benefits as part of the marital estate, it is worth noting what else we said in *Strong*. At ¶ 40, quoting *In re Marriage of Kraft* (Wash. 1992), 832 P.2d 871, 877, we said that "a trial court in a marriage dissolution action may consider military disability retirement pay as a source of income in awarding spousal or child support, or generally as an economic circumstance of the parties justifying a disproportionate award of [marital] property to the nonretiree spouse." Today, however, on the narrow review of an order

8

denying contempt, we stand in no position to undo or redo the court's Order dividing the marital estate to comport with the intent of this proviso.

¶20    For the foregoing reasons, the District Court is affirmed.

/S/ PATRICIA O. COTTER

We Concur:

/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ JIM RICE

Justice W. William Leaphart dissenting.

¶21    I dissent.

¶22    In *In re Marriage of Strong*, 2000 MT 178, ¶ 16, 300 Mont. 331, ¶ 16, 8 P.3d 763, ¶ 16, we held that federal law preempts the State from distributing V.A. benefits "as part of a marital estate." The Court reasons that *Strong* "effectively overruled *Stone*" and goes on to rationalize that "[w]e made no distinction in *Strong* between the exercise of jurisdiction in cases involving maintenance and cases involving the division of the marital estate." ¶¶ 16 and 17.

¶23    First of all, that *Strong* did not expressly overrule *Stone* suggests that the Court implicitly recognized that the maintenance issue in *Stone* was distinguishable from a division

9

of the marital estate. Secondly, whether or not the Court in *Strong* drew a distinction between maintenance and division of the marital estate, the federal precedent as well as the Montana statutes do draw such a distinction.

¶24 The federal precedent, *Mansell v. Mansell* (1989), 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675, relied upon in *Strong,* preempts a state from distributing federal benefits "as marital property." *Mansell*, 490 U.S. at 588-89. In *Strong*, as in *Lutes*, the issue is whether the court can distribute benefits as part of the marital estate. The answer is no, it cannot. In *Stone*, however, the Court did not purport to divide the benefits as part of the marital estate. Rather, the parties agreed that the husband would pay maintenance and that he would obligate himself to pay such maintenance from his benefits.

¶25 *Stone* is premised on the fact that maintenance is separate and distinct from the division of marital property–which is the subject of the *Mansell* preemption. This distinction is bourne out by the Montana statutes which provide that, in determining the amount of maintenance, the court must consider the financial resources of the party seeking maintenance, "including marital property apportioned to him . . . ." Section 40-4-203(2)(a), MCA. In other words, the amount of maintenance is determined *after the marital property has been divided*. Since maintenance is separate and distinct from the distribution of the marital estate, it is not subject to the preemption.

¶26 Not only did *Strong* not overrule *Stone*, it in fact recognized the distinction between division of property and an award of maintenance by holding that, although the court could

10

not consider the V.A. benefits for purposes of dividing the marital estate, it could consider post-dissolution V.A. benefits in determining the amount of maintenance. *Strong,* ¶¶ 29-¶40. *Stone* is entirely consistent with *Strong* in that it recognizes that the parties can voluntarily contract to pay the maintenance with the very same benefits that the court itself can "consider." Such an agreement as to maintenance does not mean that the V.A. benefits have been distributed "as part of the marital estate."

¶27　In needlessly overruling *Stone*, the Court has obliterated the distinction between maintenance and division of the marital property. The Court reads more into the preemption doctrine than is necessary and does so at the expense of the constitutionally-protected right to contract.

/S/ W. WILLIAM LEAPHART

Chief Justice Karla M. Gray and Justice Brian Morris join in the dissent of Justice Leaphart.

/S/ KARLA M. GRAY

/S/ BRIAN MORRIS

Chief Justice Karla M. Gray, dissenting.

¶28　I join in Justice Leaphart's dissent. In particular, I expressly second his statements that *Strong* not only did *not* overrule *Stone*, but that the two are entirely consistent. In any event, however, it is important to point out that even if the Court were correct, this case points out the necessity that we either harmonize a prior decision, properly distinguish it or

13

explicitly overrule it. The failure to do so creates the very kinds of problems encountered here by litigants, legal practitioners, trial courts and this Court.

¶29 I write separately with regard to an issue Cynthia raises but the Court, quite properly, does not address. The Court notes at ¶18 that Cynthia did not present her estoppel argument to the District Court and, for that reason, we do not address it because it is raised for the first time on appeal. This result should not, in my view, necessarily be interpreted to mean that Cynthia is now without any avenue of relief regarding the correct--but unfortunate--result in this case. Relief may be available to her via such means as a motion to reopen the property disposition pursuant to § 40-4-208(3)(b), MCA, or some appropriate action pursuant to Rule 60(b), M.R.Civ.P., with regard to the Property Settlement Agreement incorporated into the Decree here. I am not advising that Cynthia take any further action or follow either of these potential avenues of redress; nor, of course, can anyone know whether or to what extent actual redress might be forthcoming. I merely write to express my view that Cynthia is not necessarily at the "end of the road" with regard to the issues in this case.

/S/ KARLA M. GRAY