FILED

03/02/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0070

DA 20-0070

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 55N

IN RE THE MARRIAGE OF:

SHARILYN J. SIMONSEN,

      Petitioner and Appellee,

  and

RUSSEL A. SIMONSEN,

      Respondent and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Eighth Judicial District,<br>In and For the County of Cascade, Cause No. CDR-18-0216<br>Honorable John A. Kutzman, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

          Patrick F. Flaherty, Flaherty Gallardo Lawyers, Great Falls, Montana

      For Appellee:

          Dana A. Henkel, Terrazas Henkel, P.C., Missoula, Montana

          Jeffrey S. Ferguson, Jeffrey S. Ferguson Law Office, PLLC, Great Falls, Montana

Submitted on Briefs: February 3, 2021

Decided: March 2, 2021

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of non-citable cases published in the Pacific Reporter and Montana Reports.

¶2 Russell A. Simonsen (Russ) appeals the December 31, 2019, Final Parenting Plan entered by the Eighth Judicial District Court, Cascade County, awarding primary custody of the parties' two children to Sharilyn J. Simonsen (Shari) during the academic year. We consider:

1. *Whether the District Court erred by designating Shari as the primary residential custodian during the academic year in the Final Parenting Plan?*

2. *Whether the District Court erred by holding Russ in contempt?*

¶3 The parties were married in Great Falls, Montana, on July 31, 2004. The parties had two children during the marriage, J.W.S. and K.H.S., both of whom were minors throughout this proceeding. On April 24, 2018, Shari filed a Petition for Dissolution. Russ opposed terminating the marriage and sought reconciliation.

¶4 Shari moved out of the marital home and into her parents' home in July 2018. The District Court found that her decision to live with her parents was caused by her inability to finance a new home while tied to the existing mortgage on the marital home and that this housing arrangement aggravated the relationship between Shari and the children, who

preferred to reside at the marital home because they identified it as their "safe space" and they had their own bedrooms there.

¶5 The District Court found that Russ did not conduct cordial interactions with Shari in front of the children. Emergency authorities were called to respond to Russ' erratic behavior toward Shari on one occasion and were nearly summoned on another. The District Court also found that Russ spoke poorly of Shari around the children and "adopted what is most charitably described as a laissez faire attitude toward facilitating parenting time between Shari and the children." Concerned with Russ' behavior and his withholding of the children from her, Shari filed a Motion for an Emergency Parenting Plan on October 5, 2018. The District Court held a hearing regarding the motion on December 19, 2018. At the conclusion of the hearing, the District Court, not wanting "to reverse the primary custody relationship [with Russ], at least not yet[,]" orally issued an Interim Parenting Plan that placed the children with Russ on weekdays and with Shari every other weekend. Upon further consideration, the court *sua sponte* issued a Revised Interim Parenting Plan on January 15, 2019, wherein it increased Shari's time with the children to every weekend and required that Russ facilitate two evening phone calls per week between Shari and the children.

¶6 A Final Parenting Plan Hearing was held February 21, 2019. The District Court heard testimony from Russ, Shari, the children, a parent of J.W.S.'s friend, and counselors who had met with the children. On February 25, 2019, the District Court entered its Findings of Fact, Conclusions of Law, and Decree of Dissolution of Marriage, which incorporated a Stipulated Property Agreement, but reserved ruling on a Final Parenting

3

Plan. The Stipulated Property Agreement required, among other things, that Russ refinance the marital home and remove Shari from the mortgage. However, Russ did not refinance the marital home and remove Shari from the mortgage until December 2019, after months of proceedings to prod him, including four show cause hearings and entry of an Order of Contempt. Despite this, Shari was able to purchase a home sometime after the February 2019 hearing, enabling the children to have their own bedrooms at her residence.

¶7 On December 31, 2019, the District Court issued its Final Parenting Plan along with Findings of Fact, Conclusions of Law, and Order wherein it concluded the best interest of the children would be served if they would "reside with Shari for the academic school year with visitation to occur every other weekend with Russ, and for the children to reside with Russ during the majority of the summer vacation with visitation to occur every other weekend with Shari." From the evidence, the District Court found that Russ had, among other improprieties: attempted to alienate Shari and the children by blaming the divorce on her; told the children Shari was "leaving the family"; and purposefully acted to hinder the children's relationship with Shari. This finding was buttressed by Russ' testimony that the children and Shari got along amicably prior to the separation, in stark contrast to the problems that occurred thereafter. The court also found that Russ manipulated the children in an attempt to get Shari to reconcile with him, and thereby undermine her in the eyes of the children, by, among other things, having the children invite Shari on excursions with Russ and bringing the children to watch as he begged her to return in her parents' front yard.

¶8 A counselor opined at the hearing that the children preferred to live with Russ, but the District Court determined, given the timing—Russ had retained her the month prior to the hearing—and that Russ had asked oddly-framed questions to the children in the counselor's presence, the counselor was primarily retained to influence the hearing. Similarly, after speaking with the children, the District Court determined that the children preferred the comfort of the marital home and having their own bedrooms, which did not equate to preferring to live with Russ, and that Shari moving into her own home would eventually alleviate any discomfort felt by the children while staying with her. From this, the District Court concluded that Russ was being an intentionally ineffective co-parent, a position supported not only by the foregoing but by Russ failing to inform Shari of thoughts of self-harm articulated by J.W.S., and excluding Shari from the children's counseling sessions. The District Court found the children desired to have "fun time" with both parents and to spend both weekday and weekend time with each parent. In its Conclusions of Law, the court carefully considered the best interest of the children, entering a specific conclusion regarding each factor enumerated in § 40-4-212(1), MCA (2019). Russ appeals the Final Parenting Plan.

### Final Parenting Plan

¶9 Because the district court is in a superior position to weigh the evidence and credibility of witnesses, so long as the findings are supported by substantial evidence "we will not overturn the court in a child custody matter unless we determine that there has been a clear abuse of discretion." *Czapranski v. Czapranski*, 2003 MT 14, ¶ 10, 314 Mont. 55, 63 P.3d 499 (citing *In re Marriage of Bukacek*, 274 Mont. 98, 105, 907 P.2d 931, 935

(1995)); *In re Marriage of McKenna*, 2000 MT 58, ¶ 14, 299 Mont. 13, 996 P.2d 386 ("Where the findings are supported by substantial credible evidence, this Court will affirm the custody decision unless it is shown that the trial court committed a clear abuse of discretion."). We review a district court's findings of fact to determine if they are clearly erroneous. *Czapranski*, ¶ 10 (citing *In re Marriage of Fishbaugh*, 2002 MT 175, ¶ 19, 310 Mont. 519, 52 P.3d 395).

¶10     A district court must determine child custody in a manner that effectuates the best interest of the child after considering the thirteen factors enumerated in § 40-4-212(1), MCA. *Fishbaugh*, ¶ 20; *see* § 40-4-212(1), MCA. Though the court must consider each factor articulated by the statute, it need not make a specific finding relating to each. *Czapranski*, ¶ 11 (citing *Fishbaugh*, ¶ 20).

¶11     Russ contends that the District Court, in granting Shari primary custody time during the academic year, endorsed the viewpoint of Shari while disregarding those of the children, the counselors, and himself. Russ argues the court's custody determination was not supported by substantial evidence, therefore rendering the Final Parenting Plan clearly erroneous. We disagree. The District Court clearly addressed the statutory guidelines, entering conclusions of law that were precise and addressed each statutory factor, affording them proper weight under the circumstances. Further, the court's findings reveal comprehensive consideration of all evidence Russ asserts was ignored; significant weight was not accorded because Russ' coercive actions weakened the strength and credibility of the testimony of the counselors and children.

6

¶12    Perhaps Russ' most salient point of contention is that the children expressed a preference to reside with him.  However, upon its review of the testimony, the District Court found it was more the marital home, not Russ, that was the source of their comfort. The record supports what the District Court found—both Russ and Shari are good, loving parents and the children desire time with both parents.  However, the record also supports the court's finding that Russ had not demonstrated an ability to effectively co-parent and facilitate a positive relationship between Shari and the children.  Where there are conflicts in testimony, it is the function of the trier of fact to resolve those conflicts and we will not substitute our judgment for that of the trier of fact because it is the trial court that is in the better position to resolve child custody issues. *McKenna*, ¶ 17.  We hold there is substantial evidence supporting the District Court's determination that it is in the best interest of the children to share custody as described in the Final Parenting Plan Order and that the Order is not otherwise clearly erroneous.  We also hold that, given the trial court's careful assessment of the factors in § 40-4-212(1), MCA, and its "independent analysis of the facts of the case to make its custody decision," there is no clear abuse of discretion.  *McKenna*, ¶ 19 (internal quotation and citation omitted).

### *Contempt*

¶13    Russ states the District Court has not yet entered its final ruling on contempt of court, and that, "[u]pon remand the District Court Judge can award attorney's fees, a contempt sanction and put [Russ] in jail[.]"  Shari argues there were several contempt orders and Russ has not designated the order he is seeking to appeal.

7

¶14 Unless an exception applies, Rule 6(1) of the Montana Rules of Appellate Procedure limits appeals to final orders. A contempt order is reviewable "on a writ of certiorari," although it may be appealed if the contempt order "includes an ancillary order that affects the substantial right of the parties involved." Section 3-1-523(1), (2), MCA. The "family law exception" is "limited." *Marez v. Marshall*, 2014 MT 333, ¶ 23, 377 Mont. 304, 340 P.3d 520. "We generally reject the direct appeal of a contempt order in a dissolution of marriage case that goes purely to the district court's contempt power" and does not adjudicate or affect any ancillary matter falling within the district court's continuing jurisdiction over the rights of the parties. *In re Marriage of Lutes*, 2005 MT 242, ¶ 10, 328 Mont. 490, 121 P.3d 561; *Lee v. Lee*, 2000 MT 67, ¶ 37, 299 Mont. 78, 996 P.2d 389 (holding that a "lone contempt order" may not be reviewed on direct appeal).

¶15 The August 7, 2019, Order clearly constitutes an order of contempt in a family law proceeding. However, the exception allowing for direct appeal does not apply as the Order did not impact the substantial rights of the parties. The Order was a "lone contempt order" aimed at maintaining the dignity and authority of the District Court and had no ancillary impact on any substantial rights relating to the court's continuing jurisdiction over the marriage dissolution or the Final Parenting Plan. *Lee*, ¶ 37. Further, Russ' argument that § 3-1-511, MCA, requires that he be "given an opportunity to defend himself" has no merit as regarding that Order, as it was preceded by the August 1, 2019, show cause hearing on the topic. Therefore, the exception does not apply and the contempt order is not ripe for review by the Court at this time. *Marta Corp. v. Thoft*, 271 Mont. 109, 114, 894 P.2d 333, 336 (1995) (determining that it was premature for the Court to rule on contempt prior to

final judgment being issued by the district court when there was no applicable exception). If, as Russ argues, there are further contempt matters to be resolved, we do not undertake review of those matters herein.

¶16    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶17    Affirmed.

/S/ JIM RICE

We concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ INGRID GUSTAFSON