FILED

03/24/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0307

DA 25-0307

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 62N

IN RE THE MARRIAGE OF:

TANYA NEVIN, n/k/a TANYA SAURESSIG,

      Petitioner and Appellee,

   and

GUY NEVIN,

      Respondent and Appellant.

APPEAL FROM:   District Court of the Sixth Judicial District,
In and For the County of Park, Cause No. DR-19-88
Honorable Brenda R. Gilbert, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Kevin S. Brown, Erin E. Harris, Paoli & Brown, P.C., Livingston, Montana

      For Appellee:

          Jami Rebsom, Jami Rebsom Law Firm, PLLC, Livingston, Montana

Submitted on Briefs:  January 7, 2026

Decided:  March 24, 2026

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Guy Nevin (Nevin) appeals from the April 11, 2025 Findings of Fact, Conclusions of Law, and Judgment entered in the Sixth Judicial District Court, Park County. The District Court found him in contempt and ordered him to pay $72,800 in child support to his former wife, Tanya Saueressig (Saueressig), while denying his motion to find her in contempt. We affirm in part, and reverse in part.

¶3 Nevin and Saueressig married in 1993 and have two children, Z.N. and S.N. When Saueressig petitioned for dissolution of the marriage in August 2019, Z.N. was a legal adult and S.N. was 14 years old. Post-separation, Nevin moved into a small camper on a parent's property. Nevin's living arrangement allowed him to save money, but would not accommodate S.N., who continued to reside full-time with Saueressig in the family home. The Final Stipulated Parenting Plan ("Parenting Plan") signed by Nevin and Saueressig established that the "residential schedule shall be as equal as possible between both parents." The plan further stated that Saueressig would claim S.N. as a dependent on her taxes and that Nevin would pay her $1,400 a month in child support until S.N. reached 19 years of age.

2

¶4     Simultaneously, the parties entered into a Property Settlement Agreement, wherein Nevin and Saueressig agreed to cooperate with each other to "effectuate changes in titles to property agreed to be divided hereunder, to change the names and responsibilities for payments upon charge accounts and the other debts divided under this [Property Settlement Agreement.]"  Pursuant to this agreement, Nevin paid approximately $23,000 toward his share of the tax debt.  Saueressig was responsible for her student loan debt, which the parties had previously consolidated.

¶5     Nevin decided to rent an apartment with enough space for S.N. to reside with him, and, in November 2019, S.N. began residing primarily with Nevin.  Prior to this change in circumstances, Nevin made one child support payment to Saueressig for $1,400 in September 2019 and one payment for $800 in October 2019.  After S.N. began residing with him more frequently, Nevin moved to amend the Parenting Plan and his child support obligations in November 2019.  Saueressig moved to dismiss for lack of proper service. After Nevin failed to respond, the court dismissed his motion in January 2020.  He never refiled.  The parties now dispute the specific duration of S.N.'s relative time residing between them, though the record indicates S.N. primarily lived with Nevin or in his Livingston apartment until she turned 19 in February 2024.  Neither party documented the specific durations of S.N.'s time with the parents.

¶6     On March 28, 2024, Saueressig moved the District Court to find Nevin in contempt and to order him to pay $72,000 in child support accrued since 2019 under the terms of the Parenting Plan.  In response, Nevin asserted Saueressig should be equitably estopped from seeking the accumulated child support because S.N. had "lived almost exclusively" with

3

him since November 2019. He further took issue with the calculation underlying the 2019 child support calculation. Nevin also moved to enforce the final Property Settlement Agreement, asking the court to hold Saueressig in contempt for her failure to pay back her student loan and to remove Nevin from the loan.

¶7 On March 11, 2025, the District Court held a hearing on the cross-motions for contempt. Nevin asserted his earnest belief that he was relieved from paying child support due to the duration of S.N. residing with him, an informal agreement between the parties waiving his child support obligations, and Saueressig's acquiescence in his delinquency on child support in the intervening years.

¶8 As for his motion to hold Saueressig in contempt for failing to remove him as a party to her student loans, Nevin pointed to her delinquencies and late payments on the loan, which he claimed had impacted his credit individually as well as his ability to seek financing for commercial endeavors. Saueressig maintained the student loan was consolidated during their marriage and the application for consolidation named Nevin as the borrower and Saueressig as spouse, with most of the late payments occurring during the marriage. Nevin maintained he made some payments on Saueressig's student loan debt to protect his own credit.

¶9 The District Court found Nevin in contempt of the dissolution decree and ordered him to pay $72,800 in child support arrearage to Saueressig. The court further denied Nevin's motion to hold Saueressig in contempt but reiterated its order for her to pay the student loan obligation and hold Nevin "harmless from any liability thereon."

¶10 On appeal, Nevin raises two issues which we address in turn.

4

¶11    First, we turn to Nevin's argument regarding his request for equitable relief from his child support obligations under the Parenting Plan. As an exception to the general rule prohibiting appeal of a contempt order except by writ of certiorari, a party may appeal a contempt judgment in a family law proceeding where the judgment affects the substantial rights of a party involved. Section 3-1-523, MCA. In such instances, our standard of review is limited to inquiring into whether the district court acted within its jurisdiction and whether evidence supports its findings. *Woolf v. Evans*, 264 Mont. 480, 483, 872 P.2d 777, 779 (1994). The existence and interpretation of a contract is a question of law reviewed for correctness. *Schubert v. Toepp*, 2025 MT 239, ¶ 12, 424 Mont. 373, 578 P.3d 106 (citation omitted). The findings of a trial court sitting without a jury are reviewed for clear error. *Schubert*, ¶ 12. Findings of fact are clearly erroneous if they are not supported by substantial evidence, the court misapprehended the effect of the evidence, or this Court's review of the record convinces it that a mistake has been made. *In re Marriage of Nevin*, 284 Mont. 468, 472, 945 P.2d 58, 61 (1997).[1] Nevin does not question the District Court's continuing jurisdiction over the Parenting Plan.

¶12    Nevin argues that Saueressig is equitably estopped from pursuing child support arrearage because she acquiesced to his years of delinquency after S.N. purportedly began residing with him. Ordinarily, the amount of child support payments may only be modified prospectively. *In re Marriage of Hooper*, 247 Mont. 322, 324, 806 P.2d 541, 543 (1991) (citing § 40-4-208(1), MCA). "It is established law in Montana that neither laches nor

---

[1] Despite the similar name, the cited case is unrelated to the instant case.

equitable estoppel applies to recovery of child support arrears." *In re Marriage of Pfeifer*, 2013 MT 129, ¶ 14, 370 Mont. 158, 301 P.3d 821 (citing *Schmitz v. Engstrom*, 2000 MT 275, ¶ 14, 302 Mont. 121, 13 P.3d 38; *Fitzgerald v. Fitzgerald*, 190 Mont 66, 69-71, 618 P.2d 867, 869 (1980)). The only exception occurs when the parties establish, by clear and convincing evidence, that there is: (1) a substantial and continuing change in circumstances rendering the original support decree inequitable; (2) a mutual agreement between the parties made in good faith; and (3) conduct consistent with the agreement over a period of years. *In re Pfeifer*, ¶ 14.

¶13 The terms of a parenting plan agreement consolidated within a dissolution decree "are enforceable as contract terms." Section 40-4-201(5), MCA. "A contract in writing may be altered by a contract in writing or by an executed oral agreement, and not otherwise." Section 28-2-1602, MCA. "An executed contract is one the object of which is fully performed." Section 28-2-104, MCA. An oral modification to a contract is executed when both parties have fully performed. *DeNiro v. Gasvoda*, 1999 MT 129, ¶ 13, 294 Mont. 478, 982 P.2d 1002 (citation omitted). A party who acquiesces to the modification of a contract may be estopped from asserting damages arising from breach of the original contract. *DeNiro*, ¶ 13 (citation omitted).

¶14 Here, the District Court erred as a matter of law by finding no agreement to modify the Parenting Plan between the parties. The parties had reached an agreement under which Saueressig waived Nevin's child support obligations once S.N. began living primarily with Nevin. Nevin thereafter ceased paying child support, a modification of the Parenting Plan ratified and fully performed upon the execution of the parties' obligations when S.N. turned

6

19, more than four years after S.N. began primarily residing with Nevin. The record shows that Saueressig acquiesced to Nevin not paying child support after S.N.'s primary residential change and did not object to this new arrangement until filing her motion for contempt in the instant case. Accordingly, we conclude the parties modified the Parenting Plan to relieve Nevin of his child support obligations.

¶15 Having now determined an agreement relieving Nevin of his child support obligations indeed occurred, we find the District Court's contempt order was not supported by the evidence in the record. S.N. changing her full-time residence from Saueressig to live with Nevin represented a substantial and continuing change in circumstances, rendering the original Parenting Plan inequitable because the original terms would have required Nevin to make child support payments when he was the primary custodian of the parties' daughter. The parties' conduct over the years after this change was consistent with the agreement to relieve Nevin of his child support obligations. Thus, Nevin has met the narrow exception to the bar on the application of equitable estoppel in child support arrearage cases. *In re Pfeifer*, ¶ 14. Accordingly, the District Court's order for Nevin to pay the child support arrearages is reversed.

¶16 Second, we address Nevin's argument that the District Court abused its discretion in declining to hold Saueressig in contempt due to failing to pay her student loan obligations and remove Nevin from the loan under the terms of the Property Settlement Agreement.

¶17 "Where we review a district court's decision not to find a party in contempt, we will not reverse the decision absent a blatant abuse of discretion." *In re Marriage of Harms*,

7

2022 MT 41, ¶ 11, 408 Mont. 15, 504 P.3d 1108 (citing *In re Marriage of Lutes*, 2005 MT 242, ¶ 7, 328 Mont. 490, 121 P.3d 561).  A court abuses its discretion by acting arbitrarily without employment of conscientious judgment or exceeding the bounds of reason resulting in substantial injustice.  *In re Harms*, ¶ 11 (citation omitted).  A district court has the responsibility to enforce its orders, and contempt is a discretionary tool a court may use to enforce compliance with its orders.  *In re Marriage of Baer*, 1998 MT 29, ¶ 45, 287 Mont. 222, 954 P.2d 1125.  When a district court determines there is no need to enforce compliance with its order or the actions of a party do not challenge the court's dignity or authority, we will not reverse its decision absent a blatant abuse of discretion.  *In re Baer*, ¶ 45.

¶18    Here, the District Court determined Saueressig had generally complied with the mandates regarding the student loan debt.  Further, Nevin failed to produce evidence connecting any delinquencies with the student loan debt and adverse effects on his credit score.  The court noted Saueressig is already responsible for her student loan debt and reiterated that was her obligation under the Property Settlement Agreement.  We will not fault the District Court for exercising its discretion to exhort Saueressig to meet her obligations under the Property Settlement Agreement by paying her debt and using best efforts to remove Nevin from the loan rather than find her in contempt.  Accordingly, the District Court's judgment denying Nevin's motion for contempt is affirmed.

¶19    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  In the opinion of the

Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶20    Affirmed in part and reversed in part.

/S/ LAURIE McKINNON

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M. BIDEGARAY
/S/ BETH BAKER
/S/ INGRID GUSTAFSON